# MARY A. LARRICK et al., Appellants, v. FREDER-ICK G. HEATHMAN et ux., Appellants.

### Division One, June 6, 1921.

1. **DEED BY ENTIRETY**; Resulting Trust: Character of Proof. A deed conveying land to "Fred. G. Heathman and Fannie B. Heathman, husband and wife" upon its face creates an estate by the entirety. But after her death a resulting trust in her favor may be shown by parole proof; but the burden of proof to overcome the deed is upon her heirs or devisees, and such proof must be of such strength as will leave no doubt as to the trust.

2. ———: ———: Presumption: Intention. The presumption of a resulting trust arising from the fact of one party paying all or a part of the consideration money for a deed may be rebutted by parole testimony, and the intention of the parties at the time the deed was made is a material element in determining the question of trust or no trust.

3. **RESULTING TRUST**: Wife's Money: Used Without Her Written Consent. Since the Married Woman's Acts of 1889 became effective, a resulting trust arises in favor of the wife (and upon her death in favor of her heirs) upon the purchase of lands with her money and the taking of title in her husband, without her written consent. But she can purchase land herself and use her own money to pay for it and have the deed name her and her husband as grantees, without her written consent or a written contract, and no resulting trust will arise in her favor.

4. ———: ———: Deed by Entirety: By Wife's Direction. The deed was made to the husband and wife in November, but not delivered until January. The land of her father was sold in October, and she received $1572 for her share therefrom; and that money and $500 paid by him went to pay for the land, the greater part of the consideration of $2200 being paid when the deed was delivered in January. They went to the seller and talked over with him the matter of the deed, and he testified that both said they had money to put in the land and wanted the deed so drawn that if either died the other would get the land, and he suggested that they have a joint deed drawn, and both agreed to that, and she said that was the way she wanted the deed made,

and it was accordingly so drawn. They both had previously examined the land, and thereafter went together to the seller and agreed to buy it. *Held*, that the wife was as much a buyer as the husband, and the two buyers, as between them and the seller, had the right to direct the devolution of the title, and it was immaterial who checked out the funds that went to pay for it, since she was investing her own funds, and when the seller made her the conveyance she desired, both she and her heirs were thereafter precluded from questioning its character, and hence no resulting trust in favor of either at any time arose.

Appeal from Shelby Circuit Court.—*Hon. V. L. Drain,* Judge.

REVERSED AND REMANDED (*with directions*).

*Enoch M. O'Bryen* and *J. S. Arnote* for plaintiffs.

(1) Where a husband invests his wife's personal property without her written consent in real estate and takes the deed in the name of both, an estate in trust is created to the extent of the wife's money invested. Sec. 8309, R. S. 1909; Garner v. Jones, 52 Mo. 72; Jones v. Elkins, 143 Mo. 651; McLeod v. Venable, 163 Mo. 545; Johnson v. Johnson, 173 Mo. 97; Frost v. Frost, 200 Mo. 483; Hudson v. Wright, 204 Mo. 432; Donovan v. Griffith, 215 Mo. 149; Moss v. Ardry, 260 Mo. 605; Holman v. Holman, 183 S. W. 623; Powell v. Powell, 183 S. W. 625; Cross v. Huffman, 217 S. W. 520.    (2) Plaintiffs were entitled to judgment for a larger proportion of the land in controversy than was awarded to them by the court because the court failed to take into consideration, in awarding plaintiffs' judgment, the money, the joint accumulation of Frederick G. Heathman and his wife, invested by him in the land in controversy. McCloud v. Venable, 163 Mo. 545, 63 S. W. 847.    (3) The plaintiffs were entitled to recover rents from the defendants since the death of Fannie B. Heathman, April 26, 1916, Frederick G. Heathman, the defendant, occupied the land in controversy after the death of Fannie

B. Heathman, exclusively as against the plaintiffs, claiming the land as his own, and that the defendants had no interest in it, and is still making that contention, and therefore held adversely to the plaintiffs. 38 Cyc. 66; 7 R. C. L. 820, sec. 23; Starks v. Kirchgraber, 134 Mo. App. 121; Bates v. Hamilton, 144 Mo. 1; Donovan v. Griffith, 215 Mo. 149. (4) The above authorities would seem to settle the proposition, but if the court desires to go further in the proposition we cite the following cases: Crane v. Wagoner, 27 Ind. 52; Early v. Friend, 16 Grat. 21; Ward v. Ward, 40 W. Va. 611; Mining Co. v. Yarwood, 91 Am. St. 874, note 4; Fenton v. Miller, 116 Mich. 45; Cain v. Cain, 53 S. C. 350; Rippe v. Badger, 125 Iowa, 725; McGahan v. Roundout Bank, 156 U. S. 218, 39 L. Ed. 403.

*R. G. Maupin* and *Harry J. Libby* for defendants.

(1) The warranty deed to "Fred G. Heathman and Fannie Heathman, husband and wife" created in terms, an estate by the entirety, and the surviving tenant stood seized from the beginning of the entire estate to the exclusion of the heirs of the deceased tenant. Gibson v. Zimmerman, 12 Mo. 386; Garner v. Janes, 52 Mo. 68; Beauchamp v. Schrader, 52 Mo. 72; Hall v. Stephens, 65 Mo. 670; Edmondson v. Moberly, 98 Mo. 523; Bains v. Bullock, 129 Mo. 117; Hume v. Hopkins, 140 Mo. 65; Otto Stifel Brew. Co. v. Saxy, 273 Mo. 159. (2) The burden of proving that a resulting trust arises is cast upon the parties claiming against the deed, and the evidence for that purpose must be so clear, convincing and complete as to leave no doubt in a reasonable mind that it was the intention of the parties to the transaction that a resulting trust should be created. Morford v. Stephens, 178 S. W. 441; Joerger v. Joerger 192 Mo. 133; Philpot v. Penn, 91 Mo. 44; Johnson v. Quarles, 46 Mo. 423. (3) And since a resulting trust may be shown by a parol proof, as a presumption of law arising out of

the transaction, so the presumption may be rebutted by parol proof showing that no trust was intended by the parties at the time of the transaction, and that it was the intention to confer the beneficial interest upon the supposed nominal purchaser; and whatever facts appear tending to prove that it was intended that the nominal purchaser should take the beneficial interest as well as the legal title, negatives the presumption. 1 Perry on Trusts (6 Ed.), sec. 139; Morris v. Clare, 132 Mo. 232; Morford v. Stephens, 178 S. W. 441. (4) And where a clear understanding is had at the time the purchase is made, the money paid, and the deed taken, by which the nominal purchaser was to have both the legal and beneficial interest, it is incompetent for the person who paid the purchase money to put a different construction upon the transaction at a subsequent time and claim a resulting trust in the estate contrary to the understanding and intention at the time. 1 Perry on Trusts (6 Ed.), sec. 140. Intention is an essential element. Such a trust arises only where such may be reasonably presumed to be the intention of the parties. It has been said the presumption springing from one party paying all or a part of the purchase money arises only in the absence of all evidence of intention. And that a resulting trust can never arise contrary to the expressed intention of the parties at the time of the sale or transaction. 3 Pomeroy's Eq. Juris. (3 Ed.) sec. 1031; 39 Cyc. 105, 113, 127; Ferguson v. Robinson, 258 Mo. 129; Stephens v. Fitzpatrick, 218 Mo. 708; Morford v. Stephens, 178 S. W. 441. (5) The intention of the Legislature in enacting the Married Woman's Statute (Sec. 8304, R. S. 1909) was to remove the disabilities under which a married woman labored at common law, so as to permit her to contract and be contracted with, sue and be sued, and the language used being entirely without exception, is broad enough to permit her to contract with her husband, and her contract with him will be enforced at law, just as if she had contracted with third persons.

Rice Stix v. Sally, 176 Mo. 107; Grimes v. Reynolds, 184 Mo. 679; Smelzer v. Mier, 196 S. W. 22; Combs v. Knowlton, 200 S. W. 743; Aeby v. Aeby, 192 S. W. 97. (6)   The testimony of the witness Marion Dale, agent of the vendor, Homer Dale who was the only living witness, competent to testify, as to what occurred at the time of the purchase of the land, and whose testimony is all the testimony on the point, and which testimony is wholly uncontradicted, shows that Fannie G. Heathman and her husband Frederick G. Heathman had had their deed so made that whichever one died, the survivor would take the whole, and that she wanted it that way, wanted her husband to have it, and shows clearly (a) that the wife did not intend to create a trust for the benefit of her heirs; (b)   That she did intend, and did, in law, and in fact, create an estate by the entirety, and that her husband as survivor became and is entitled to the whole; and   (c)   that she intended whatever money she invested in the land to be a provision for her husband in the event she died first.   Haguewood v. Britian, 273 Mo. 89; McCune v. Graves, 201 S. W. 891; Craig v. Bradley, 153 Mo. App. 593.

GRAVES, J.—Action to have declared a resulting trust in and to eighty acres of land in Shelby County, Missouri.   Mary A. Larrick is the mother and James A. Larrick and Mattie L. Byers are the brother and sister of Fannie B. Heathman, who died childless and intestate April 26, 1916, in Shelby County, Missouri.   These are the plaintiffs who seek to enforce a resulting trust, on the theory that the money of Fannie B. Heathman was used in the purchase of the land involved.   Defendant Frederick G. Heathman is the former husband of the deceased, Fannie B. Heathman, and the defendant Addie Heathman is his present wife.

The land in question was bought in 1901 from one Homer Dale, and the deed taken in the names of "Fred

G. Heathman and Fannie B. Heathman, husband and wife.'' They lived upon the land to the date of Fannie B. Heathman's death. Fannie B. Heathman (the wife) received from the real estate of her father's estate the sum of $1,572, and there is but little doubt that this money went into the land in question, which land cost $2,200. The difference was _paid by the husband, Frederick G., who, after getting the deed as aforesaid, put valuable improvements thereon, aggregating some $2400 or more. It is shown that Fannie. B. had but little other property of her own. It included two horses, two cows and $100 cash, which likewise came from her father's estate. The $1572 came from the sale of the father's land.

After hearing all the testimony, the trial court decreed a resulting trust in favor of plaintiffs in said land as follows:

''Wherefore, it is ordered, adjudged and decreed by the court, that the defendant Frederick G. Heathman took and held the title to 1575-2200 of said land in trust for the said Fannie B. Heathman and that 625-2200 thereof was taken and held in his own right and is now so held by him. That upon the death of the said Fannie B. Heathman as aforesaid one-half of the 1575-2200 of said land descended to Frederick G. Heathman as her surviving husband, and one-half thereof to the plaintiffs, Mary A. Larrick, James A. Larrick and Mattie L. Byars, each being seized of and entitled to an equal share in the said one-half of 1575-2200 of said land, and said lands so held by said Frederick G. Heathman are hereby impressed with a trust in favor of said plaintiffs in accordance with the findings herein.

''It is further adjudged and decreed that the plaintiffs recover nothing for rents from said Frederick G. Heathman, and that said defendant Frederick G. Heathman recover nothing for improvements placed upon said land, and that the costs of this action be taxed against defendant and that execution issue therefor.''

From such judgment by both sides an appeal is taken. The vital question is the real character of the deed from Dale. Of this, and the pertinent facts in the opinion.

I.   Upon its face the deed from Dale created an estate by the entirety. If we were confined to that, the end of this case would be in sight. But a resulting trust may be shown by parol proof, and in the face of the deed, Quantum if the *quantum* of proof appears. The burden of Proof. of proof is upon plaintiffs in this case, if they are allowed to overturn the deed. [Joerger v. Joerger, 193 Mo. l. c. 139; Morford v. Stephens, 178 S. W. l. c. 441.] And such proof must be of a strength that will leave no doubt as to the trust. [Morford v. Stephens, supra; Ferguson v. Robinson, 258 Mo. l. c. 133.] The intention of the parties at the time the deed was made is a material element in determining the question of trust or no trust. That is to say, the presumption of a trust arising from the fact of one party paying all or a part of the money, may be rebutted by the testimony, as well as by the deed. The deed itself may be contradicted, so as to show a resulting trust, if the facts in evidence warrant.

The question of the proof required may be gathered from the case, supra. So in this case it but remains to measure the proof made by plaintiffs by the rule established by these cases as to *quantum* of proof. Many other cases might be cited, but these will suffice to illustrate the rule.

II.   It would be jockeying with facts to suggest that $1572 of Fannie G. Heathman's did not go into the land. It is clear that Fred G. Heathman put in the remainder. Consent Whether or not he got any portion of this from of Wife. Fannie's share in the personal estate of her father is not definitely shown by the evidence. It appears that Heathman was a man of limited means at his marriage a few years before this transaction, and the improvement

placed upon the farm were no doubt from accumulations made after the purchase of the farm. When the farm was purchased in 1901, Fannie had not yet received her part from the sale of the father's real estate, and the first $500 payment on the farm was made by the husband. But, before the delivery of the deed, in 1902, she had received the $1572, and as indicated it is clear that this money went into the land. Had the husband taken full title to the land in his own name, under these facts, without more, a resulting trust might have to be declared, as to the interest represented by the money of the wife. [Moss v. Ardrey, 260 Mo. l. c..604.] So, too, it might be said that had the husband caused the deed creating an estate by the entirety to be made without the knowledge or consent of the wife (after placing her money in as a part of the purchase money) then a like situation might result. [Moss v. Ardrey, supra, and the cases therein cited and reviewed; Johnston v. Johnston, 173 Mo. l. c. 118.]

Our cases cover the time before, as well as the time after, the Married Woman's Act of 1889. This case, upon the facts, would come clearly under the law existing after the passage of the several Married Woman's Acts. It arose at a time when, under ordinary circumstances, the wife could even contract with her husband. It arose at a time when Section 8309, Revised Statutes 1909 (formerly Section 4340, R. S. 1899), was in full force and effect. Under this statute we have ruled that when the money of the wife is invested in lands (either as full or partial consideration thereof) without the written assent of the wife, a resulting trust arose in favor of the wife (and of course in favor of her heirs) to the extent of the money so invested. Whether or not this construction should have been given to the peculiarly worded *proviso,* in said section, we need not now discuss. It had been so long so ruled that in Moss v. Ardrey, 260 Mo. l. c. 604, et seq., supra, the writer took it as settled. What our views might have been had we been dealing with it as an original proposition is immaterial. So that, inasmuch as no

written assent of the wife appears for the use of the wife's money here, this case upon this theory would fall within the line of cases cited in the Moss case, supra. And this is the contention of the respondents.

III.   But grant it that it requires the written consent of the wife, for the husband to possess himself of his wife's personal property, and further grant it that his agency for the wife must have this same written assent, yet on the facts in this case, do the plain-tiffs have an interest in these lands? Of course, if Heathman and wife were not tenants by entirety they did have an interest. In other words if Mrs. Fannie Heathman could enforce a resulting trust, the plaintiffs, her sole heirs, could do the same. And in the discussion of this, the real question in this case, we shall leave out of consideration the right of the wife to contract with her husband. We shall not consider the question, as to whether or not the husband and wife could have agreed to each put in money in the land, and have made a deed which would create an estate by the entirety.   Personally we think that after the Married Woman's Acts such a contract could have been made, and that the establishment of that contract would show the intent of the parties and destroy the theory of a resulting trust.   But as said, we do not pass on this question, and as this is an action in equity, we can, so far as the evidence is concerned, separate the wheat from the chaff upon vital issues, and exclude the irrelevant evidence from consideration here.

This land was bought before Fannie Heathman got her $1572 from her father's estate.   It is fair to assume from the evidence that she intended to put her money into this land when she got it.   The land of the father was sold in October, 1901, and the deed from Hale was made in November, 1901, but not delivered until January, 1902.   The greater part of the consideration for the deed was paid upon its delivery, which was after the wife got her $1572 for the interest she had in her father's land. So run the facts as to payments.

The foregoing, however, are not all of the facts. The land purchased belonged to a young man who was in the West at the time. His father was his agent for the sale of the land. - Marion Dale, the father of Homer Dale, and the agent of Homer Dale, was a witness in the case. The importance of the witness is evidenced by the heated contest of counsel in,the course of the examination of the witness. The witness was a very old man, and vigorously cross-examined, but when his testimony is read from beginning to .end, it is fairly stated in an excerpt therefrom, thus:

"WITNESS: Will I be permitted to tell what the conversation was between Mr. Heathman and his wife and me.

"Yes, sir.

"A. We talked the matter over about the deed and they both said they had money to put in the land, and they wanted it fixed so if one died the other would get it, and I suggested that they have a joint deed drawn, · and they both agreed to it, and Mrs. Heathman said go ahead and have it drawn that way; that was the way she wanted it and me and Mr. Heathman went to Clarence that evening and had it drawn that way."

The witness had previously testified that Mr. and Mrs. Heathman had examined the farm, and had thereafter come to see him as to the price, and on the same day had agreed to buy it. A few days afterward he went to their then home, on the old Larrick place, and asked them about how they wanted the deed to be made. From his testimony it clearly appears that the deed was made just as the purchasers desired it to be made. To my mind it is quite clear that husband and wife had previously agreed to this course, but this matter we leave out of consideration. The testimony of Marion Dale makes it clear that the husband and wife were buying this property; that both were putting money into it; that they

wanted it fixed so that the survivor would get it all; that they directed the seller, through his agent, so to make the deed; that the seller did make the deed in pursuance to a joint request and direction of the purchasers. If these be the facts, and we are satisfied that they are, then we do not have an agency of the husband for the wife, nor do we have a contract between husband and wife, for consideration. We simply have a contract between buyers and sellers. Mrs. Heathman was as much a buyer as was her husband, and the two buyers, as between them and the seller, had the right to direct the devolution of title. In this situation it would be immaterial as to who checked out the funds. Mrs. Heathman was investing her own funds, and all parties so understood it. As a party to the contract of purchase, she had a right to agree upon the form of conveyance, and when the seller made to her the conveyance which she desired, both she and her heirs are precluded from questioning the character of such conveyance. It is clear to us that the intent of the two purchasers of the land involved was to create an estate by the entirety, and that they so contracted with the seller. In a case like this the intent is a vital matter. This evidence *tends* to show that Fannie was investing her own money, and not that her husband had gotten possession of it without her written consent, and was using it for his own benefit. That question, i. e. the use of the wife's money without her written assent, is not really in this case. Here we have husband and wife purchasing a farm (each putting money therein), and in the course of their contract of purchase directing the form of conveyance that they desired. These facts corroborate the deed, rather than tending to establish a resulting trust.

Had Mrs. Heathman made the purchase of the farm herself, and invested her own money therein to the full extent of the consideration, there would be no question that she, as the purchaser, could have had the deed made in the present form, and it would bind her. [Haguewood v. Britain, 273 Mo. 89.] The mere fact that the two were

purchasers and jointly directed the form of the deed cannot change the situation. The Haguewood case, supra, controls this case. We conclude that the record fails to establish a resulting trust, and the judgment *nisi* is reversed, and the cause remanded with directions to enter judgment for defendants. All concur.