RUTH MILLIGAN and CLEO LEEKA, Appellants, v. FRED E. BING, FRED E. BING, Administrator of Estate of DAISY BING.—108 S. W. (2d) 108.

Division One, July 30, 1937.

*John J. Robison* for appellants.

*Robert Frost* and *Moore & Moore* for respondents.

FRANK, P. J.—Action by appellants, plaintiffs below, to declare a resulting trust in certain real estate, to determine title thereto and for partition thereof. The decree below was for defendant and plaintiffs appealed.

Plaintiffs are daughters and only children of defendant, Fred E. Bing, and his deceased wife, Daisy Bing. Both daughters are married and live in their own home. At the time of the trial one daughter had been married ten years, the other thirteen years. Daisy Bing died intestate in Clinton County, Missouri, on February 21, 1931. The land in question is a 210-acre farm located in Caldwell County. The farm was purchased from one Henry E. Gorrell, for $12,600 and title thereto was taken in the name of "Fred E. Bing and Daisy Bing, husband and wife, jointly."

Appellants contend that although the farm stood in the joint name of their father and mother, it was not an estate by the entirety for two reasons, (1) their mother, Daisy Bing, directed their father, Fred Bing, to purchase the farm and pay $11,000 of her separate money on the purchase price thereof and take title thereto in her name; that he did purchase the farm, using $11,000 of his wife's money to pay on the purchase price, but in violation of her directions fraudulently took title thereto in their joint names, (2) that he appropriated $11,000 of their mother's money to his own use by investing it in the farm without her written assent. For both reasons it is contended that he held the land for the use and benefit of his wife during her lifetime, and at her death it descended to her heirs at law.

Respondent contends that he and his wife held title to the land as an estate by the entirety, and at her death he was, and now is the sole owner thereof.

No point is made against the pleadings. They sufficiently present the contentions of both parties.

▮ Numerous points are presented and discussed, but they present but one question. Did husband and wife own and hold the land as an estate by the entirety? If so, at the death of the wife the husband was the sole owner thereof. If not, a trust resulted in favor of the wife during her lifetime, and now to her heirs at law, to the extent that her part of the money furnished bears to the whole purchase price of the land. To that question we address ourselves.

Upon its face, the deed created an estate by the entirety. But regardless of that fact plaintiffs are entitled to contradict the deed by parol evidence showing that it was not the intention of the parties to create an estate by the entirety at the time the deed was made. Plaintiffs are attacking the deed, therefore, the burden of proof is upon them. They will not be permitted to overthrow the deed and establish a resulting trust in the land in favor of the heirs of the wife except upon evidence so clear and convincing as to leave no reasonable doubt in the mind of the chancellor as to the existence of the alleged trust. The rule in such cases is stated by this court in Larrick v. Heathman, 288 Mo. 370, 376, 231 S. W. 975, 976, as follows:

"Upon its face the deed from Dale created an estate by the entirety. If we were confined to that, the end of this case would be in sight. But a resulting trust may be shown by parol proof, and in the face of the deed, if the quantum of proof appears. The burden of proof is upon plaintiffs in this case, if they are allowed to overturn the deed. [Joerger v. Joerger, 193 Mo. l. c. 139, 91 S. W. 918, 5 Ann. Cas. 534; Morford v. Stephens, 178 S. W. l. c. 441.] And such proof must be of a strength that will leave no doubt as to the trust. [Mor-

ford v. Stephens, supra; Ferguson v. Robinson, 258 Mo. l. c. 133, 167 S. W. 447.] ■ The intention of the parties at the time the deed was made is a material element in determining the question of trust or no trust; that is to say, the presumption of a trust arising from the fact of one party paying all or a part of the money may be rebutted by the testimony, as well as by the deed. The deed itself may be contradicted, so as to show a resulting trust, if the facts in evidence warrant. The question of the proof required may be gathered from the cases, supra. So in this case it but remains to measure the proof made by plaintiffs by the rule established by these cases as to quantum of proof. Many other cases might be cited, but these will suffice to illustrate the rule."

Since the burden of proof sufficient to overturn the deed is on plaintiffs, we will examine the evidence and determine whether or not they carried that burden.

■ On March 23, 1929, during the lifetime of Daisy Bing, she and her husband opened a joint bank account in the names of "Fred E. or Daisy Bing." Prior to the opening of the joint bank account they each carried an individual account. When the joint account was opened, the individual accounts were closed. On August 8, 1929, Daisy Bing inherited $9000 from her people. This $9000 was deposited in the joint bank account. They were both present when the deposit was made, and both directed that such deposit be made in their joint account. On August 29, 1929, the sum of $9046 was withdrawn from the joint account and invested in government bonds. Daisy Bing ordered the bonds and directed that they be registered in the name of herself and husband which was done. On September 19, 1930, the bonds were sold for $9040 and that amount was deposited in the joint bank account. On September 22, 1930, the sum of $10,000 was withdrawn from the joint bank account on a check signed by Fred E. Bing and that sum was paid on the $12,600 purchase price of the farm.

It is at once apparent, without discussion, that the acts of the husband and wife in placing and keeping their money in the bank in a joint accounts, and in buying bonds in their joint names do not contradict the terms of the deed or tend to show that it was not their intention to create an estate by the entirety at the time the deed was made. Such evidence, therefore, is not sufficient to overturn the deed. However, plaintiffs offered other evidence which we will now consider.

Both plaintiffs, and the husband of one of the plaintiffs testified, in substance, that shortly after the purchase of the farm Daisy Bing was worrying because she had not received her deed to the farm; that she told her husband it was her money that purchased the farm, and she wanted title thereto taken in her name; that her husband

told her there was a flaw in the abstract or title and as soon as he got that corrected he would take the title in her name and bring the deed to her; that at the time he told her these things the deed had been made to them in their joint names and recorded. Plaintiff, Cleo Leeka, testified that he never brought the deed home to his wife.

The evidence of these witnesses, standing alone, tends to support plaintiffs' contention that it was not the intention of the parties to create an estate by the entirety at the time the deed was made, but there is substantial evidence to the ocntrary which must be considered.

A witness for defendant, Mrs. Lena Moyer, testified that Daisy Bing told her that she did not want to sell the farm and put the money in the bank because of the uncertainity of banks; that they had the title fixed in a joint deed; that if she died first Fred would have the farm, and if Fred died first she would have a living.

Another witness for defendant, Mrs. Ratcliff, testified that Daisy Bing told her that her property went to her husband if she died first, and if he died first it went to her; that they had bought the farm and she wanted Fred to have all at her death; that she did not want the girls to have anything at her death.

Eunice Bing, mother of Fred Bing, testified that she was visiting in the home of Fred and Daisy Bing at the time Fred brought the deed home; that Daisy Bing said, "here is my deed to the farm, I had it fixed the way I wanted it, got it fixed so if I go first it is Fred's, if he goes first it's mine, plenty to keep either one of us." This witness further testified that both Fred and Daisy Bing's health was bad; that she knew they had their business together because she saw their checks and liberty bonds—always Fred and Daisy Bing; that Daisy Bing told her they were all that way; that Daisy Bing usually deposited Fred's money which he earned on the railroad; that Daisy Bing had no income to speak of before she inherited money from her people; that Fred and Daisy Bing seemed to be happy and congenial.

Evidence of statements made by Daisy Bing to the effect that she had the deed fixed the way she wanted it, and her statement that it was so fixed that if she died first her husband would get the farm, and if he died first she would get it, amounted to substantial evidence tending to show that at the time the deed was made it was the intention of the parties to create an estate by the entirety with the attendant right of survivorship. A kindred question was so decided by this court in Bunker v. Fidelity National Bank & Trust Co., 335 Mo. 305, 73 S. W. (2d) 242, 245. In that case Bunker had bonds on deposit with the trust company as the property of himself and wife. After the death of his wife he changed the bonds

which he had originally deposited with right of survivorship in his wife to the right of Bertha A. Bunker, survivor. Witnesses testified to statements Bunker made concerning the deposit of the bonds. Of that testimony and what it tended to prove, we said:

"Walter F. Norris, sales manager of the bond department of the Fidelity National Bank & Trust Company, testified that he was a friend of Bunker and sold stocks and bonds for him; that he knew of this group of bonds in controversy and the manner in which Bunker had deposited them at the New England National Bank as the property of himself and wife; and that in 1927 and 1928 Bunker had referred to these bonds in the course of discussions concerning certain stocks (evidently the Sheffield and refining company stocks above mentioned) which he (Bunker) wanted to place in the name of himself and his daughter-in-law jointly with right of survivorship, and at such times Bunker stated that he had changed the bonds which he had originally deposited for safe-keeping in the New England Bank with 'right of survivorship' in his wife 'to the right of Bertha A. Bunker, survivor, so that she (Bertha A. Bunker) would be taken care of if anything happened to him' and that 'he had these Liberty Bonds in the New England Bank in joint ownership or under joint receipt for himself and Bertha A. Bunker when anything happened to him.' A logical and reasonable inference arises from this witness's testimony that in depositing the bonds under receipts therefor in effect designating them as the property of 'W. A. Bunker or Bertha A. Bunker or Survivor,' Bunker intended to create, and believed he had effectually created, a joint tenancy in the bonds with the attendant right of survivorship, and desired to likewise create a joint tenancy in the particular stocks. It will be recalled that Miss Michelsen testified that Bunker spoke of the manner in which the stock certificates were finally made out as creating 'a joint tenancy.' The receipts covering the bonds had been changed so as to substitute the name of Bertha A. Bunker in lieu of the name of his deceased wife prior to the time Bunker decided to create the joint tenancy in certain selected stocks, and it seems apparent that he wished to do with these particular stocks as he had done with the bonds which he had deposited with the trust company."

The statements made by Daisy Bing bearing upon her intention to create an estate by the entirety at the time the deed was made do not stand alone. They are corroborated by the undisputed evidence that she and her husband kept their money in a joint bank account; that she directed that the money she inherited be placed in that joint account; that she ordered that bonds be purchased in the joint name of herself and husband; that the deed was made to her and her husband jointly, all of which tends to show that it was the intention of both parties to hold all of their property jointly with the right

of survivorship. As heretofore stated, plaintiff offered evidence which, if believed by the chancellor, would have supported a finding that Daisy Bing did not intend to have the title to the farm taken in the joint names of herself and husband, but defendants evidence is to the contrary. This conflict in the evidence presented a disputed question of fact for the chancellor to decide. The finding and decree for defendant indicates that the chancellor did not believe that the husband, contrary to the directions of his wife, fraudulently took title to the farm in their joint names, and concealed that fact from his wife, as alleged in the first count of plaintiff's petition.

We next take the contention that the husband appropriated the separate property of his wife to his own use by investing her money in the farm and taking title thereto in their joint names without her knowledge or written assent.

Section 3003, Revised Statutes 1929, and decisions of the courts construing that statutes are cited in support of this contention. The pertinent provisions of the statute invoked read as follows:

"All real estate and any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture, by gift, bequest or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or has grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband. This section shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife: *Provided*, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own use and benefit. . . ."

Without reviewing the many cases cited, it will be sufficient to state that under the positive mandate of the statute as well as the decisions of the courts construing that statute, if a husband, without the written assent of his wife, invests her separate money in real estate and takes title thereto in the name of himself and wife jointly, he does not hold such property as an estate in the entirety, but will be considered as a trustee for the amount of his wife's money so invested. Otherwise stated, when the wife's money is invested in land without her written assent, a resulting trust arises in her favor, and in favor of her heirs after her death, to the extent of the money so invested. But this rule does not prevent the wife from

doing what she pleases with her own separate property. Since the passage of the Married Women's Act, "a wife, with respect to owning, managing, and disposing of her property, whether real or personal, is a *femme sole*, and, being *sui juris*, may do with it as she pleases." [Murphy v. Wolfe, 329 Mo. 545, 45 S. W. (2d) 1079, 1082, and cases cited.] She may invest her own money in land to the full extent of the consideration and take title thereto in the name of herself and husband. Under such circumstances, they would hold the land as an estate by the entirety, and the deed so conveying the land to them would be binding on her and her heirs. Again, where husband and wife jointly invest their money in land and direct that it be conveyed to them jointly, such conveyance creates an estate by the entirety, unless it be shown by the proper quantum and character of evidence that they intended otherwise. [Larrick v. Heathman, 288 Mo. 370, 231 S. W. 975; Murphy v. Wolfe, supra.]

■ We repeat that the deed conveying the land in question to "Fred E. Bing and Daisy Bing, husband and wife, jointly," on its face, created an estate by the entirety. Since plaintiffs are attacking this deed, the burden is upon them to show by clear, cogent and convincing evidence that the husband invested his wife's money in this land without her written assent. An examination touching the question as to who invested the wife's money in the land is necessary.

Plaintiff, Cleo Leeka, testified:

"Q. Do you know what disposition was made of this money, if any? A. Yes sir, she bought the farm, this money was to be put in the farm, and she said it was to be her farm.

"Q. Do you know what disposition was made of the money in the Cameron Bank? A. Yes sir, she bought this farm."

Mrs. Loren Brockman, plaintiffs' witness, testified:

"Q. What statements did Mrs. Bing make in relation to the ownership of the farm? A. Why, she said that she had bought this land with her money and she said the banks was so uncertain. she put it in this farm."

Mrs. Oswald, plaintiff witness, testified:

"Q. What did Mrs. Bing say? A. She said she invested the money in the farm on account of the bank was so uncertain."

The evidence shows that the husband checked the funds out of the joint account to pay for the land, got the deed from the grantor and took it to his wife. There is no evidence tending to show whether the husband, the wife, or both, invested the wife's money in the land, other than the evidence above set out. This evidence tends to show that the wife and not the husband invested her money in the farm. The purchase price of the farm was $12,600. There is no

contention that the wife's money paid the entire purchase price. The evidence would amply justify a finding that they jointly invested their money in the farm and directed that it be conveyed to them jointly. If this be true, the wife was as much a buyer as was her husband, and it was immaterial which of them checked the money out of the joint account. The checking out of the funds, and looking after the conveyance, were the mere mechanics of closing the deal after the investment was made. If the wife made her own investment, and the evidence tends strongly to show that she did, then the question of the husband investing her money without her written consent is not an issue in the case. The conclusion we have reached finds support in Larrick v. Heathman, supra.

The husband was called as a witness in his own behalf and permitted to deny that he had the conversation with his wife to which Cleo Leeka, Ruth Milligan and Orville Leeka testified. Contention is made that the admission of the husband's testimony violated the rule that where one party to a transaction is dead the other party should not be permitted to testify.

The admission of this testimony, if error, does not call for a reversal of the case. This being an action in equity, we can exclude incompetent evidence from consideration here.

A fair consideration of all the competent evidence justifies the conclusion that Fred E. Bing and Daisy Bing jointly invested their money in the land, and took title thereto in their joint names, intending thereby to create an estate by the entirety, and we so find. It results, therefore, that upon the death of Daisy Bing, Fred E. Bing was the sole owner of the land.

For the reasons stated, the decree below should be and is affirmed. All concur.