F. L. Mᴄɢɪɴɴᴇss ᴇᴛ ᴀʟ., Respondents, ᴠ. Rᴏʙᴇʀᴛ
Mɪᴛᴄʜᴇʟʟ ᴇᴛ ᴀʟ, Appellants.

St. Louis Court of Appeals, April 6, 1886.

1. Rᴇꜰᴇʀᴇᴇ—Pʀᴀᴄᴛɪᴄᴇ.—The findings of a referee, in actions at law, have the effect of a verdict of a jury, and will not be reviewed, as to the weight of the evidence, on appeal.

2. Aɢᴇɴᴄʏ—Pʀᴏᴏꜰ ᴏꜰ.—Agency may be shown by proof that the alleged agent acted publicly and continuously about the alleged principal's business with his knowledge and apparent consent.

3. ——— Pᴏᴡᴇʀs.—A general agency being established, that the agent acted contrary to his principal's instructions will not discharge the latter, if the agent acted within the general scope of his powers.

Aᴘᴘᴇᴀʟ from the St. Louis Circuit Court, Aᴍᴏs M. Tʜᴀʏᴇʀ, Judge.

*Affirmed.*

W. C. Mᴀʀsʜᴀʟʟ, for the appellants : Agents can not delegate to third parties the powers conferred on them by their principals. *Paul v. Edwards*, 1 Mo. 30 ; *Brown v. Insurance Co.*, 45 Mo. 221 ; *Ess v. Truscott*, 2 Mees. & W. 385 ; *McClure v. Insurance Co.*, 4 Mo. App. 148. Where the power of an agent to bind the principal is conferred by a contract with a third party, and the contract prescribes the mode and manner of proceeding, the principal is not bound by any act of the agent that is not done in such mode and manner. *Mechanic's Bank v. Schaumburg*, 38 Mo. 228 ; *The State v. Bank of Missouri*, 45 Mo. 528 ; *Wahrendorf v. Whitaker*, 1 Mo. 205 ; *Tate v. Evans*, 7 Mo. 419 ; *Barcus v. Hannibal Co.*, 26 Mo. 102 ; *Delafield v. The State of Illinois*, 26 Wend. 192. Where the power to order additional work to that called for in a contract between the principal and contractor is conferred upon an agent nominated in such con-

tract the principal is not bound by the acts of any one else pretending to act as his agent in reference to such work. "*Expressio unius est exclusio alterius.*" Dunlap's Paley's Agency, 175; 2 Kent (5 Ed.) 633; *Brewster v. Hobart*, 15 Pick. 202. The power to˙pay for work done by a contractor under a contract with the principal, does not constitute the person who makes the payment the general agent of the principal, nor give him authority to bind the principal by a new and direct contract in reference to work or additional work contemplated by the original contract. *Mechanic's Bank v. Schaumburg*, 38 Mo. 228; *East Ind. Co. v. Hensley*, 1 Esp. 112; *Fenn v. Harrison*, 3 T. R. 757; *Harner v. Sharp*, 44 L. J. Ch. 53; *Pickering v. Busk*, 15 East, 43; *Snow v. Perry*, 9 Pick. 542; and especially *Anderson v. Volmer*, 83 Mo. 403.

TAYLOR & POLLARD, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

The defendants were owners of a business building on Third, between Pine and Olive streets, in the city of St. Louis, and contracted with Rude & Luke for improving the same by extensive alterations and additions. The plaintiffs became sub-contractors for the painting and glazing. A considerable quantity of the same sort of work was done by the plaintiffs outside of that embraced in the contract with Rude & Luke, and for this extra work the present suit is brought, to enforce a mechanic's lien against the property. The cause was sent to a referee, who reported in favor of the plaintiffs, with the lien prayed for. The report was approved and judgment entered accordingly for $1,347.70, with interest.

The controversy turns chiefly on the question whether the work was done under any authority from the defendants. In their behalf it is contended that the persons who ordered the work to be done were not lawfully empowered agents for that purpose, and, further, that the

plaintiffs' only remedy is against Rude & Luke, the principal contractors.

It appears that Robert Mitchell, one of the defendants, was a resident of Cincinnati, Ohio, and William Mitchell, the other, resided in St. Louis, but was an invalid, and disqualified for attending to any business. Neither of them took any personal part in the management or direction of the improvements, while in progress, and neither was ever seen about the premises from the beginning to the ending of the work. William J. S. Mitchell, a son of William, and nephew of Robert Mitchell, appeared to represent the defendants in everything pertaining to the building of the work going on, and was present daily, directing, approving, or disapproving. His connection with the whole business is so clearly and succinctly presented by the referee, that we can not here show it better than by an extract from the report submitted to the court below. The referee says:

"The evidence further shows that in the making of said alterations and improvements the defendants acted through one W. J. S. Mitchell, a son of the defendant William Mitchell, and nephew of his co-defendant; that on their behalf said William J. S. Mitchell employed George I. Barnett & Son as architects and superintendents to design and draft plans and specifications for said alterations and improvements, and to superintend the carrying out of the same; and also negotiated and signed the defendants' names to the contract with Rude & Luke; that he also, on their behalf, made contracts with other persons for the doing of other minor parts of the work done under said plans; that neither of the defendants was present at the building during the whole time the work was in progress, the defendant William Mitchell, though residing in St. Louis, being unable to attend to business, and the defendant Robert Mitchell, being a resident of Ohio; that the defendants in fact intrusted to said William J. S. Mitchell, the entire management of the work of improving and altering their said building, and the employment of the

persons by whom it was to be done; and that he in fact took entire charge of it and was daily at said building and giving attention to it; and that the defendants, from time to time, during its progress, approved his doings in respect thereto, by honoring checks and drafts drawn on them by him to pay the persons employed by him to do the work and furnish materials for it.

"It further shows that said William J. S. Mitchell, acting on behalf of the defendants, authorized Messrs. Barnett & Son, as the superintendents of the work, to make such changes from time to time in the plans as they might deem best, and to order to be done, by any one, such other things additional to those contracted for by Rude & Luke as they thought necessary; also, that said Barnett & Son, with the knowledge and acquiescence of said William J. S., in carrying on the superintendence of said work, employed one Paul Hush as their assistant and deputed to him the performance of a large part of the duties of such work of superintendence, and that said Hush, during nearly all the time said work was progressing, had the actual charge of the superintending thereof as the assistant and representative of said Barnett & Son. It also showed that many of the items of work and materials sued for by the plaintiffs were ordered by said Hush in his capacity as assistant for said Barnett & Son.

"It was claimed for the defendants at the hearing that Hush, as the sub-agent of Barnett & Son, had no power to bind the defendants for such of the items of work and materials sued for as were ordered by him and not by said Barnett & Son, and that they, therefore, are not liable for any such; that the power to order work and materials was reposed in Barnett & Son alone and could not be delegated by them to Hush. As to this, even conceding that Barnett & Son could not, without the consent of the defendant, or, at least, of their general agent, William J. S. Mitchell, delegate their discretionary power to Hush, I however still think the defendants are liable for

the materials so ordered by Hush and sued for by the plaintiffs, for the reason that the evidence shows that all of the items so ordered by him were ordered by him, either at the direct instance of said William J. S. Mitchell, or with his knowledge and approval, and that as to them the request or order of Hush was the request of said William J. S., as the general agent of the defendants. And I accordingly find as to them that they were requested by the defendants acting through their said general agent. As to those of the items which appear from the evidence to have been ordered by Barnett & Son, I do not understand the defendants to claim they were unauthorized. But whether they do or not, I find in fact that said Barnett & Son had authority to request them for them."

Upon a careful reading of the whole record, we find the referee's conclusions abundantly supported by the testimony of several witnesses. The younger Mitchell, however, testified that he had no authority from the defendants to make contracts for the work to be done, other than that specified in the Rude & Luke contract; that he said nothing directly to the plaintiffs about any of the work mentioned in their account; that, as to much, if not all of it, he had thought it was included in the Rude & Luke contract. In short, the general effect of his testimony seems to be, that no authority emanated from the defendants to anybody, through any channel, to do any work which was not to be done under the Rude & Luke contract. It is impossible to reconcile his testimony with the facts stated by the other witnesses. His making and concluding the first negotiations, his signing of the principal contract in the names of the defendants, his assumption of general and constant control over the whole work, including that done by the present plaintiffs, and, moreover, the frequent ratifications of his acts by the defendants, in honoring all his drafts for payments upon the work as it progressed

under his superintendence; these, with other acts and admissions proved by sundry witnesses, made out a very strong case of established general agency for the defendants in the younger Mitchell. The finding of the referee must be treated like the verdict of a jury; and, under such circumstances, this court would have no authority to disturb either. The same general remarks, as to the state of the testimony and the conclusive findings of the referee, are alike applicable to the inquiry whether the work for which this suit is brought is independent of the Rude & Luke contract, and whether it was in fact ordered by the younger Mitchell, as agents for the defendants. The weight of testimony largely sustained the affirmative of either proposition. Every item in the account allowed by the referee was proved to have been either directly ordered by the agent, or expressly approved by him before the work was completed.

Complaint is made that the referee found contrary to the evidence, in assuming that Barnett & Son were authorized "to order to be done, *by any one,* such other things additional to those contracted for by Rude & Luke, as they thought necessary;" and that, by the terms of the Rude & Luke contract, such things additional were to be done by Rude & Luke, and by nobody else. The contract appears to have been given in evidence, but is not copied into the record. We can not know, therefore, what it contained in this particular, and the presumption must be in favor of what is reported by the referee.

The defendants complain that the judgment is excessive; that the account, as first presented by the plaintiffs, was for $1,254.72, but they afterwards sued for $1,443.82, and the referee allowed them $1,347.70, or $112.98 more than the amount of the bill first presented. The discrepancy was satisfactorily explained in the testimony. It appeared that, when the account was first made out, some items were omitted because charged in the plaintiffs' account against Rude & Luke. Upon later examina-

-tion, it was found that those items had no connection with the Rude & Luke work, but belonged to the extra work ordered by the younger Mitchell. The items were thereupon withdrawn from the Rude & Luke account, and incorporated in the one against the defendants.

We find nothing in the record to warrant a reversal of the judgment, which is, therefore, affirmed. All the judges concur.