ST. LOUIS & SAN FRANCISCO RAILROAD
COMPANY, Appellant, v. W. H. YANKEE et al.,
Respondents.

Springfield Court of Appeals, January 3, 1910.*

1. **RAILROADS: Right of Way: Mining Under Surface.** A
railroad company, as owner of a right of way for its railroad,
is possessed of the absolute right of having its right of way
unmolested; the owner of the land, subject to the right of way,
has the right to take the ore from· underneath the surface,
provided he carries on his mining operations in such manner
as not to interfere with the surface right of the railroad com-
pany.

2. **APPELLATE PRACTICE: Suits in Equity: Reviewing Evi-
dence.** In a suit in equity it is the duty of the appellate court
to review all the evidence and weigh the same anew, but the
usual practice is for the court to defer largely to the findings
of the chancellor on all the issues of fact, and to refuse to
disturb the judgment on the ground that the findings are
against the weight of the evidence.

3. ————: ————: ————. In a suit in equity where the evi-
dence introduced by the respective parties is conflicting, the
Supreme Court has repeatedly held that since the chancellor
has the witnesses before him and the opportunity of observing
their demeanor upon the witness stand, and the manner of tes-
tifying, he is in a much better position to judge of the cred-
ibility of the witnesses and the weight to be given to their
testimony than is the appellate court.

4. ————: ————: ————: **Expert Testimony.** In suits in
equity, where the evidence is largely expert testimony, a
greater deference should be given to the finding of the chan-
cellor, than where witnesses are testifying to ordinary facts,
for their appearance and manner of testifying is one of the
principal elements in determining the weight to be given the
testimony of expert witnesses.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,*
Judge.

AFFIRMED.

*W. F. Evans, Edgar P. Mann* and *Joseph B. Todd* for appellant.

The court erred in finding for the defendants and not for plaintiff, on the facts as disclosed by the evidence and on the law; because it is the absolute duty of mine operators to protect the surface of the ground being mined, and it is the absolute right of the surface owner to have his surface supported precisely as it was in its natural state. White on Mines and Mining Remedies, secs. 139, 212, 214; Shearman & Redfield on Negligence (5th Ed.), sec. 716; Snyder on Mines, sec. 1020; Wood on Nuisances, sec. 192; Railroad v. Mining Co., 119 S. W. 982; Railroad v. Brandau, 81 Mo. App. 1; Jones v. Wagner, 66 Pa. 429, 5 Atl. 385; Horner v. Watson, 79 Pa. 242, 21 Atl. 55; Coleman v. Chadwick, 80 Pa. 81, 21 Atl. 722; Williams v. Hay, 120 Pa. 485, 6 Am. St. 719; Robertson v. Coal Co., 172 Pa. 566, 33 Atl. 706; Coal Co. v. Hopkins, 198 Pa. 343; Maxulys v. Coal Co., 201 Pa. 70; Zinc Co. v. Franklinite Co., 13 N. J. Eq. 322; Iron Co. v. Baker, 28 N. J. Eq. 77; Consolidated Coal Co. v. Schaefer, 135 Ill. 210; Penn v. Taylor, 24 Ill. App. 292; Yandes v. Wright, 66 Ind. 319; Mickle v. Douglas, 75 Iowa 78; Erickson v. Iron Co., 50 Mich. 604; Marvin v. Iron Co., 55 N. Y. 538; Burgner v. Humphrey, 41 Ohio St. 340; Randolph v. Holden, 44 Iowa 327.

*C. V. Buckley, J. H. Spurgeon, Hugh Dabbs, R. M. Sheppard* for respondents.

The court did not err in finding the issues for the defendant and dissolving the temporary injunction in this case. Davis v. Hartwig, 195 Mo. 398; Carlin v. Wollff, 154 Mo. 545; Real Estate Co. v. St. Louis, 169 Mo. 234; 16 Amer. and Eng. Encyc. Law (2 Ed.), p. 361; Business Mens' League v. Waddill, 143 Mo. 499; Owen v. Ford, 49 Mo. 437; Railway v. Schneider, 30 Mo. App. 620; Tinker v. Kier, 195 Mo. 203; Kreamer v. Bivert, 214 Mo. 479.

GRAY, J.—The appellant, at the time this suit was commenced, was and now is, a corporation, operating a railroad through the State of Missouri, and through the southwest quarter of the southeast quarter of section 9, township 27, range 32, Jasper county, Missouri. The respondents, on November 6, 1908, and for sometime prior thereto, were mining for lead and zinc underneath the surface under and near the right of way of the appellant. The fact that the appellant had acquired by deed a strip of land fifty feet wide across said tract of land, and that it was engaged as a common carrier in operating its passenger and freight trains over said road, stood admitted. It also was conceded that the respondent, Armil, was the owner of the land, subject to appellant's right of way for railroad purposes, and that the other respondents were mining on said land under leases or contracts with said Armil.

The petition was filed on the 6th day of November, 1908, and its purpose was to enjoin the respondents from further conducting their mining operations under the right of way of plaintiff, and under the adjoining land, alleging that the defendants had been and were removing the natural support from under and near said right of way, and thereby weakening the surface of the ground, and rendering the same liable to cave in and to sink, and thereby cause said right of way and track to become unsafe and insecure, and render it hazardous to operate the trains of appellant upon its track and right of way at said place; that the defendants would proceed, unless prevented, with such mining, under and near said right of way, so as to render the operation of trains over said track unsafe and insecure, and cause the said right of way and railroad track to cave in and sink, and thereby imperil the lives and limbs of the passengers and employees carried upon said trains of plaintiff, and also endanger and cause the injury and destruction of the property of plaintiff composed of its trains, tracks and right of way, and asking for an

injunction restraining the respondents from further mining under and near said right of way at said point.

Upon the filing of the petition, a temporary injunction was granted by the circuit court, and the cause came on for trial on the 23rd day of November, 1908, resulting in a dismissal of the appellant's bill, and dissolving the temporary injunction.

After an unsuccessful effort to secure a new trial, the appellant appealed to the Kansas City Court of Appeals, and that court transferred the cause to this court.

The evidence in behalf of appellant tended to prove that the drifts in the mine underneath the track and right of way, had been cut so wide and in such a manner that there was danger of the ground caving from the surface. Plaintiff's witnesses also testified that a large pillar had been left by persons who had formerly operated said mine, and that the defendants were engaged in removing said pillar, and on account thereof, the ground would become weakened and the operation of heavy trains over the road of appellant at that place was likely to cause the ground to sink and cave. Appellants had further testimony to the effect that at some previous time the defendants had agreed that they would not cut any more dirt at the places where they were engaged in cutting at the time this suit was commenced. It was further shown by appellant's witnesses that other mines in the vicinity had caved, causing substantial damages, and that the formation of the ground and the character of mining in such mines, were similar to the mining that was being done by the respondents. The appellant's evidence further showed that many trains passed over the track at this place daily, and it stood uncontradicted that if a cave did occur while a freight or passenger train was passing over the track at said point, that great loss of life and property might be sustained. The witnesses for appellant, whose testimony tended to prove the above facts, in-

cluded the State Mine Inspector, and no effort was made to impeach any of the witnesses who testified for plaintiff in the case.

The testimony in behalf of respondents was given by about twelve witnesses, including the respondents themselves. Their testimony tended to prove that the pillar heretofore mentioned, was no support to the roof, for the reason that between the top of the pillar and the roof proper, was a seam of mud of considerable thickness, and in removing the pillar the ground would be in no wise weakened. Respondents' testimony further tended to show that the other mines which appellant claimed had caved, did not cave on account of negligent mining, but that the same was purposely caved by persons mining therein. All the witnesses for the respondents testified that the mining being done would in no wise endanger the property of the appellant, and therefore, there was no danger of the ground caving on account thereof. Some of these witnesses had been mining in the district for more than forty years, and their reputations as mining experts were not questioned.

The law of this case is simple. The appellant owned the surface right and thereby was possessed of the absolute right to have its right of way unmolested. The respondents had the right to take the ore from underneath the surface, provided they carried on their mining operations in such a manner as not to interfere with the surface right of the appellant. The right to take the ore from underneath the surface must yield, if in order to take it, the surface right of the appellant will in any wise be impaired.

By an act of the Legislature, approved June 1, 1909, it is a criminal offense punishable by fine and imprisonment, for any person to mine or excavate beneath the surface of any public highway or railroad right of way, in such manner as to cause the surface of the ground to cave. This act was passed with an emergency

clause thereby showing that the Legislature deemed it important that the legislation should become effective at once. Any person living in the mining district of Jasper county, well knows the wisdom of this act of the Legislature. It was a common occurrence that irresponsible and reckless persons were engaged in mining underneath the public road and railroads in the county, without any regard to the safety of persons who might be traveling on such highways and railroads. Owing to the insolvency of the persons causing the injury, suits for damages afforded no remedy. With all these things known and fully understood, the Legislature passed the act making it a crime to so mine in such places.

This is a suit in equity, and it is the duty of this court to review all the evidence and weigh the same anew, but the usual practice is for the court to defer largely to the findings of the chancellor on all the issues of fact, and to refuse to disturb the judgment on the ground that the findings are against the weight of the evidence. [Jones v. Thomas, 218 Mo. 508, 117 S. W. 1177.]

Where the evidence introduced by the respective parties is conflicting, the Supreme Court has repeatedly held that since the chancellor has the witnesses before him, and the opportunity of observing their demeanor upon the witness stand, and their manner of testifying, he is in a much better position to judge of the credibility of the witnesses and the weight to be given to their testimony than is the appellate court.

In Huffman v. Huffman, 217 Mo. 182, the Supreme Court In Banc, declared the rule to be as follows: "The evidence was conflicting, but the chancellor who tried the case had a better opportunity than we have to judge of the reliance that ought to be placed in the testimony of each witness. He had the witnesses before him, he heard them and saw them, under examination and cross

examination, and it is the experience of all the triers of the fact that the personal appearance and manner of the witnesses have much influence, and rightly so, in weighing and reaching a verdict. It is our duty under such circumstances, to defer to the findings of the trial judge, and so we do in this case."

In this case, if the testimony of appellant's witnesses is true, then the mining of the respondents underneath the right of way was liable to greatly injure and disturb the surface right of appellant over the land heretofore described. If upon the other hand, the witnesses for respondents told the truth, then the appellant's fears were not well grounded, and nothing was being done by them that would in any probability cause damage to the track or right of way of the appellant. It would be difficult to conceive how the testimony could be more conflicting and contradictory. In addition to the above, the testimony was largely the opinions of witnesses, and therefore, a case of expert testimony. In such cases, it seems to us that greater deference should be given to the finding of the chancellor than where witnesses are testifying to ordinary facts. Two witnesses may be called to give expert testimony in a case. It is not so much what they say, but their appearance and manner of testifying is one of the principal elments in determining the weight to be given their testimony.

We believe to reverse this judgment, we would have to violate the rule laid down by the Supreme Court for us to follow in such cases, and this, we have no desire to do, as we believe it a wise one, and supported by the great weight of authority in all the States of the Union.

The only assignment of error in this case is, that the court erred in finding for the defendants and not for the plaintiff on the facts as disclosed by the evidence.

For the reasons above given, we do not feel justified in reversing the judgment of the trial court, and therefore, the same is affirmed. All concur.