OTTO M. ROTH ET AL., PLAINTIFFS, RESPONDENTS, V. EDWARD D. HOFF-
MAN ET AL., DEFENDANTS; CAPE COUNTY SAVINGS BANK, DE-
FENDANT, APPELLANT.—111 S. W. (2d) 988.

St. Louis Court of Appeals.    Opinion filed January 4, 1938.

Motion for Rehearing Overruled January 19, 1938.

Petition for Writ of Certiorari Denied February 25, 1938.

*L. L. Bowman, W. D. Brockman* and *J. I. Sample* for appellant.

*A. E. L. Gardner* for respondents.

HOSTETTER, P. J.—This is a suit in equity begun in the circuit court of St. Louis County on July 22, 1931, the purpose of which is to have a special tax bill in the sum of $4961.85 with interest declared null and void.

The substance of the amended petition, on which the case was tried, is as follows:

That plaintiffs are husband and wife and that by a deed dated June 22, 1907, and duly recorded, they acquired the title to a tract of approximately nine acres situated in the city of Kirkwood, St. Louis County, Missouri, and have owned it as tenants by the entirety ever since; that the following is a more particular description of the tract so owned by them:

A lot in the southeast quarter (S. E. ¼) of section 35, Township 45 north, Range 5 east, having an aggregate frontage on the south side of 780.70 feet by a depth northwardly of 500.22 feet, bounded on the north by Butterfield Avenue, on the east by Geyer Road, on the south by the north line of what was known as Essex Avenue, and on the west by Carlon Avenue, in the City of Kirkwood in St. Louis County and State of Missouri.

That the city of Kirkwood in which said tract is located is a city of the fourth class and that on or about the 22nd day of April, 1929, the said city of Kirkwood enacted an ordinance, No. 2712, by the terms of which it undertook to provide for the improvement of Essex Avenue by constructing a concrete slab twenty feet wide westwardly from the west line of Geyer Road, a public street in

Kirkwood, to the western limits of said City; that Essex Avenue lay adjacent to and abutting the south line of plaintiff's land, that is to say, south of the south line of section 35, Township 45, north, Range 5 east; that during the months of June, July, and August, 1929, the Carlon Construction Company, under the contract let by said city of Kirkwood, entered upon the work of improving and constructing said Essex Avenue under and by virtue of the terms of said ordinance; that the said company constructed a concrete roadway or slab upon the south twenty feet of the tract owned and in the possession of plaintiffs; that said twenty-foot strip of plaintiff's land extended from the west line of said Geyer Road westwardly and parallel with and immediately north and adjacent to the south line of said section 35, Township 45, Range 5 east, for a distance of 780.14 feet on the property belonging to and in the possession of the plaintiffs; that a special tax bill was issued by the city of Kirkwood against the entire tract owned by plaintiffs in payment for the work and recorded as a lien on all of plaintiffs' property and the same was, by the Carlon Construction Company, assigned to the defendants Hoffman Mortgage Company and the Cape County Savings Bank and that said assignees were demanding payment from the plaintiffs; that on the 30th day of July, 1929, plaintiffs brought an ejectment suit in the circuit court of St. Louis County against the city of Kirkwood and procured a judgment for the recovery of said twenty-foot strip on which the pavement referred to had been laid; that neither the city of Kirkwood nor the Construction Company had any right or authority at any time to enter upon said twenty-foot strip, but the city of Kirkwood and the Construction Company were trespassers on the property of plaintiffs.

Plaintiffs prayed that the court declare said special tax bill null and void and that the lien apparently created thereby on their property be held null and void and that the defendants be required to present said tax bill to the proper officers of the city of Kirkwood and cause the same to be canceled and for all other proper relief, averring that they have no other adequate remedy at law.

A motion to strike out the portion of plaintiffs' petition in respect to the ejectment suit which they successfully maintained against the city of Kirkwood was made by the defendants and overruled by the trial court.

The separate answer of defendant Cape County Savings Bank admitted that the city of Kirkwood is now and was at all times a city of the fourth class and that the defendant Cape County Savings Bank is the owner of the tax bill referred to. It also admitted that Essex Avenue was paved under the proceedings instituted by the city of Kirkwood and that tax bill No. 1 in the total sum of $4,961.85, dated September 21, 1929, was issued against the entire property of plaintiffs, but denied each and every other allegation in the peti-

tion, and averred that the city of Kirkwood had acquired title to said twenty-foot strip by prescription and that there was also a common-law dedication of the strip in controversy to the public and that plaintiffs were estopped from claiming title by their conduct in seeing the work going on and making no claim of ownership to the contractor or its agents.

No claim is made, nor does the testimony show anything, to indicate that the plaintiffs ever made any deed to the city of any portion of their tract or that said strip was condemned under the provisions of the law.

The defendant Cape County Savings Bank also filed a cross-bill in connection with its answer, whereby it brought in the Kirkwood Trust Company and the Kirkwood Building and Loan Association, both being corporations, which were alleged to be holding deeds of trust on plaintiffs' property, and prayed for a special judgment against plaintiffs on their said real estate in the sum of $4961.85, together with interest thereon at the rate of eight per cent per annum from the 21st day of October, 1929, and that the same be declared a first lien superior to all encumbrances other than State, county and city taxes.

After the hearing of the testimony the court rendered a decree in favor of the plaintiffs on their cause of action and declared the tax bill in controversy null and void and not a lien on plaintiff's said real estate or a charge or demand against plaintiffs; that the defendant, Cape County Savings Bank, be required to present said special tax bill to the proper officers of the city of Kirkwood for cancellation on the records of said city and rendered a judgment and decree in favor of plaintiffs on the cross-bill of defendant Cape County Savings Bank and holding that said Cape County Savings Bank as holder of said special tax bill is not entitled to a special judgment against plaintiffs, nor against plaintiffs' said real estate on account of said special tax bill.

After an ineffective motion for a new trial an appeal was allowed to the Cape County Savings Bank and to some of the other defendants, but the said Savings Bank alone perfected its appeal to this court.

The first witness introduced by plaintiffs was J. M. Wilson, who testified that he was fifty-two years old, had lived in Kirkwood and in the vicinity of the Roth property all his life; that he lived on Essex Avenue west of Geyer Road forty-seven years ago and had been familiar with the Avenue and the surroundings ever since; that Essex Avenue runs through Kirkwood in two sections; that one section runs from Taylor Avenue west to the western limits of the city; that Geyer Road runs north and south and Essex Avenue runs east and west, beginning at Taylor Avenue some blocks east of Geyer Road and runs up to Geyer and it is a straight street running

directly through; that it follows the section or township line throughout this distance; that this was the township line dividing Townships 44 and 45; that he had a map or survey he made for Mr. Roth on this particular property; that he knew where the property was located; that Roth had lived on that property fifteen or twenty years; that Roth bought it in 1907; that he had known the premises during the time Roth lived there; that there were between nine and ten acres in the tract; that the Roth property lies west of the Geyer Road; that Geyer Road is the eastern line of Roth's property and is also the eastern line of section 35; that Geyer Road has been improved, about 1926 or 1927, with a concrete slab for some distance adjacent to this property.

Witness Wilson being shown a plat, continued: Those were plans of improvement of Essex west of Geyer and approved by the city of Kirkwood; that the first one was a plan of proposed improvement or of the improvement carried out by the city; that this property on the northeast corner of Geyer Road and Essex is the Roth property beginning at this point of Geyer Road, extending westwardly twelve chains; that it overruns that old record distance, that would be 792 feet, or, actually about 800 feet frontage on Essex Avenue; that this line in the center of the plat follows the township line or the dividing line between the townships, between two sections—2 and 35; that this center line follows the center line of the improvement as laid down on the street, 25 feet reinforced concrete slab from curb or gutter, that is the one in contention, twelve and one-half feet of the twenty-five feet slab is laid north of this township line, twelve and one-half feet is laid south of it; that in addition to laying the twenty-five feet slab the grading was carried north to a point twenty feet north of this township line and lies a similar distance south, plus the construction of a storm sewer south of this south curb running the entire distance of the frontage of this property, and further, laying a slab of twelve and one-half feet on the edge of that center line; that the center line as indicated represents the township line; that it was formerly the township line between Central and Banhamm; that the county court has fixed that township line; that the old original township line is the center line of Essex Avenue as indicated on this map; that the entire width of the slab north of this township line was twelve and one-half and there would be seven and one-half feet of grading, making twenty feet of Mr. Roth's property north of the township line; that at present he was city engineer, and had been city engineer of Kirkwood for eighteen years, at two intervals, the first from 1905 to 1920; that he was out from 1920 to 1930 and came back as city engineer the spring of 1930 and continued in that office.

From the further examination of this witness, which was very

extensive both in the direct and cross-examination, we quote the following statements made by him: ·

"When I first knew this property there was always a fence on the township line. Yes, there was a fence on the township line. It was a barbed wire fence back in the early days. Later on the front of it next to the Geyer Road was rebuilt as a picket fence. The fence was located right on the south line of his property. At that time Essex Avenue was simply a country road there at that time; just wagon width. It had no definite width until 1926 when Corona Park was laid out and they dedicated a 30-foot strip there south of the township line for Essex Avenue. Corona Park dedicated from this township line south 30 feet in 1926. . . .

"There wasn't ever a roadway of any character, or street, running west from Geyer Road on the Roth property during the time I have known that vicinity. There never has been and this covers a period of 47 years. . . .

"They actually used 20. I have seen that many times since the improvement has been made and they are occupying approximately 20 feet of the Roth property along the south line. There have been some pole lines constructed westwardly from Geyer Road along Essex Avenue. The City of Kirkwood, some 25 years ago, constructed a pole line west from Geyer Road for the purpose of stringing electric wires and giving service to property holders back in that district. Those poles were set on the south side of the old roadway, just following an irregular course of the meanderings of this old driveway or roadway, which was known as Essex Avenue. They were set as far south at 24 feet south of the Township line. . . .

"My investigation showed there never had been a dedication of any Essex Avenue of any character, no County Court record or City record. It was always known as Essex Avenue. There was a road through there south of this township line. I have known of it 45 or six years ago. We knew that as Essex Avenue forty years ago."

We have set out the substance of the testimony of this witness for the purpose of showing that if the testimony of witness Wilson was believed by the trial court, it constitutes substantial evidence to support the proposition that twenty feet of the south end of plaintiffs' land was actually used as constituting the north half, or twenty feet of the pavement and shoulder of the improvements on Essex Avenue upon which the special tax bill was issued.

Several other witnesses, who claimed that they had knowledge of plaintiffs' land and its surroundings for many years and had traveled what was then known as Essex Avenue, testified that the traveled part of same west of Geyer Road, was south of the township line and south of the south line of plaintiffs' land and south of the old picket fence line which was along the south line of plaintiffs'

tract. This testimony tended to negative the claim that the twenty-foot strip in controversy was ever established as a public road by prescription or common-law dedication.

Of course, there was other testimony varying, and even contradicting portions of the testimony of witness Wilson and other witnesses called by plaintiffs, but, this being an equity case the findings of fact made by the trial court on conflicting testimony should be given due deference by a reviewing court. [Huffman v. Huffman, 217 Mo. 182, 117 S. W. 1; Vining v. Ramage, 319 Mo. 65, l. c. 86, 3 S. W. (2d) 712; Neville v. D'Oench, 327 Mo. 34, l. c. 64, 34 S. W. (2d) 491; Kidd v. Brewer, 317 Mo. 1047, l. c. 1060, 297 S. W. 960; St. L. & San Francisco R. R. Co. v. Yankee, 140 Mo. App. 274, 124 S. W. 18.]

This testimony clearly shows that the city of Kirkwood did not acquire any title to the twenty-foot strip along the south end of plaintiffs' property either by prescription or by a common law dedication.

The following propositions of law are *apropos*, viz.:

It is well settled law that where public improvements are constructed in invitum on private grounds, tax bills issued against the owner of the abutting property, in payment for the improvements so constructed, are void. [City of Springfield ex rel. Koch v. Eisenmayer (Mo. App.), 297 S. W. 460, l. c. 462; City of Kirkwood ex rel. Baptiste v. Handlan, 285 Mo. 92, l. c. 98, 99, 225 S. W. 692; City of Springfield v. Baxter, 180 Mo. App. 40, 165 S. W. 366; Naylor v. City of Harrisonville, 207 Mo. 341, 105 S. W. 1074.]

If the only right the public has in a road is as a result of adverse user for the statutory period, then such right is limited to the traveled or used portion of the road. [Hall v. Flag Special Road Dist. (Mo. App.), 296 S. W. 164, l. c. 165; State v. Thompson, 91 Mo. App. 329.]

It is held that the following elements must actually or presumably be present to constitute estoppel by conduct: There must have been a false representation or a concealment of material facts. The representations must have been made with knowledge of the facts. The party to whom it was made must have been ignorant of the truth of the matter. It must have been made with the intention that the other party should act upon it. The other party must have been induced to act upon it. [Blodgett v. Perry, 97 Mo. 263, l. c. 272, 273, 274, 10 S. W. 891; Bigelow on Est. (3 Ed.), 484.]

Nor will mere silence or some act done, where the means of knowledge are equally open to both parties, estop the party doing the act or remaining silent. [Blodgett v. Perry, *supra*; Bales v. Perry, 51 Mo. 449; Acton v. Dooley, 74 Mo. 63; Mueller v. Kaesmann, 84 Mo. 318; Laughlin v. Wells, 314 Mo. 474, 283 S. W. 990; Wood v. White Eagle Oil Co., 220 Mo. App. 1004, 274 S. W. 894; 21 C. J.

1151; Spahr v. Cape, 143 Mo. App. 114, 122 S. W. 379; Harrison v. McReynolds, 183 Mo. 533, l. c. 550, 82 S. W. 120.]

To support a plea of estoppel as to titles to real estate, it has been held that it must appear that there was fraud or gross neglect; that the party making the admission, by his declaration or conduct, was apprised of the true state of his own title, and that others were acting in ignorance of it; that he intended to deceive or was culpably negligent in the non-assertion of his rights; and that the other party had no knowledge or means of acquiring knowledge of the true state of the title, and that he relied upon such admission to his injury. [DeBerry v. Wheeler, 128 Mo. 84, l. c. 90, 30 S. W. 338; Wilkerson v. Liebermann, 327 Mo. 420, l. c. 426, 427, 37 S. W. (2d) 533; 2 Herman on Estoppel and Res Judicata, sec. 287.]

To make out a case of implied waiver of a legal right, there must be a clear, unequivocal and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. [Schwab v. Brotherhood of American Yeoman, 305 Mo. 148, l. c. 155, 264 S. W. 690.]

The plea of estoppel is not ordinarily available where the work is being done under an ordinance which was passed without due observance of all the precedent conditions required by statute. [Hoover v. Newton (Mo. App.), 193 S. W. 895, l. c. 897; Cox v. Mignery, 126 Mo. App. 669, l. c. 676, 105 S. W. 675, l. c. 677; Perkinson v. Hoolan, 182 Mo. 189, 81 S. W. 407; Verdin v. City of St. Louis, 131 Mo. 26, l. c. 98, 33 S. W. 480, and 36 S. W. 52; Keane v. Klausman, 21 Mo. App. 495; 21 C. J. 1129, sec. 131; Dameron v. Jamison, 143 Mo. 483, l. c. 491, 45 S. W. 258.]

It is contended by counsel for defendant that plaintiffs are estopped from claiming ownership of the twenty foot strip because they saw the work in progress and made no protest or claim of ownership of the disputed twenty foot strip at that time. Suffice it to say, that there was no testimony of any public record that this south twenty foot strip of plaintiff's land had been dedicated or condemned or used as a public street and that necessarily the city of Kirkwood and its contractor were bound by the absence of such public records.

It is shown that one of the plaintiffs, Otto Roth, after reading a newspaper account of the proposed project, according to his testimony appeared before the Board of Aldermen and made objection to the building of a twenty-four foot slab on the thirty-foot street dedicated by the Corona Park people and insisted that when the City intended to construct a street on the thirty-foot strip that an eighteen foot concrete slab would be sufficiently wide, but indicated that he would be willing to dedicate an additional ten feet at some future time after his property had been subdivided, and stated further that whatever plats or maps were shown to him by the city engineer were not intelligible to him as he was unable to interpret them; that he

had no information that the city intended to take a twenty-foot strip off of his land for this improvement; that as a matter of fact, when the work of construction began it was on the south part and not on the land of plaintiffs and that there was no ground to assume that they were going to take the strip from their land until the work had progressed to a considerable extent when they began to take trees off of what he knew to be their property and when he saw that the contractors were trespassing and taking trees off of his property he went to the city clerk and sought to get the plans and specifications on or about July 9, 1929; that he was put off by the city clerk; that it was on the 19th of July that the city's contractor entered upon his property and that he consulted his attorney on the next day, July 20th, 1929, and having had no information that the city intended to trespass on his property until July 19th, 1929; that immediately plaintiffs' attorney ordered an examination of the county records in regard to the establishment of Essex Avenue along the south line of plaintiffs' propery and the reply to this inquiry was sent to him on July 26th, 1929, by the St. Louis County Land Title Company as shown by their letter (a copy of which was introduced in evidence); that on receipt of this information from the title company plaintiffs' instituted an ejectment suit against the city of Kirkwood for the purpose of ousting the city from possession of the twenty foot strip in question and ultimately obtained a judgment in ejectment.

We think there was sufficient evidence to justify the trial court in reaching the conclusion that it did, by finding that the city had acquired no title by prescription, user, dedication,.or estoppel.

Counsel for the appealing defendant strenuously insist that the trial court was in error in failing to find that the city of Kirkwood had acquired the right to use the twenty foot strip by one or more of the methods above mentioned and particularly stresses the claim of equitable estoppel.

Error is also claimed in the action of the trial court in refusing to strike from the petition the portion relating to the ejectment suit filed by plaintiffs against the city of Kirkwood, and in the admission of testimony in respect to its outcome.

We agree with counsel that for the purpose of showing an adjudication of title to the twenty foot strip in plaintiffs as against the appealing defendant, it was improper, and if that were the only purpose it should have been stricken, but the trial court in its decree expressly set out in respect to said ejectment suit that the court's finding, judgment and decree introduced in evidence by plaintiffs, were not evidence against defendants except insofar as said record and decree tended to prove the conduct of plaintiffs relevant to the issue raised by the plea of estoppel set out in the answer of the defendant Cape County Savings Bank, and was considered by the court only as to whatever relevancy, if any, said evidence had touching said

issue of estoppel. Therefore, we hold that no harm was suffered by defendant, by the inclusion of the matters in relation to the said ejectment suit.

Counsel for the appealing defendant have filed a very exhaustive and interesting brief and one asserting many sound propositions of law, but the testimony in the instant case is of such a character that it fails to support the sound propositions of law announced by them and the cases cited in support of these sound propositions of law are inapplicable and are clearly distinguishable from the facts as shown by testimony in the instant case.

We quote from their brief the following assertion as to estoppel, viz:

"Where a party claiming ownership of land stands in silence and allows another to spend large sums of money and material and labor on said property by building a street thereon without protest or objection, he will not afterwards be allowed to claim ownership of the street for the purpose of defeating the tax bills issued to pay for said improvement."

The difficulty in respect to this proposition of law, sound though it may be, is that it is not supported by the testimony in the instant case. In addition to the activities of plaintiff Roth, heretofore pointed out, his testimony is to the effect that he was not convinced that the city and its contractor intended to use the south twenty foot strip of his and his wife's land until the very day the contractor's servants actually entered on his premises and began cutting down and removing plaintiffs' trees. He knew that just two years before (1927) the city had recognized his and his wife's ownership of the twenty foot strip when it improved Geyer Road, which is the eastern boundary of plaintiff's property, and issued a special tax bill and included this particular twenty foot strip in question abutting on Geyer Road in said special tax bill and made it a part of its records.

Surely the city of Kirkwood would not do such a futile and foolish act as to issue a special tax bill creating a lien on its own property. The issuance and the entering of this special tax bill covering the twenty foot strip of plaintiffs' land on the records of the city, charged not only the city, but its contractors, Messrs. Charles H. and Harry F. Carlon, co-partners constituting the Carlon Construction Company, with notice that, at that time the city regarded plaintiffs as the owners of the twenty foot strip.

Of course, this act of the city of Kirkwood had the effect of lulling plaintiffs into a feeling of security that there was no danger of an invasion of their property. However, plaintiff Roth had the records examined to see if an easement had been created in favor of the city by some former owner. Plaintiff Roth testified that the data which he had sought from the officers of the city was never furnished, although they promised him first and kept putting him off.

The city, however, proceeded with the project as if it had acquired title to the twenty foot strip in controversy. On July 19th, 1929, the contractors' working force entered on plaintiffs' twenty foot strip and began felling trees and taking out dirt. The use of force to expel the intruders was not to be thought of. He knew that a sit-down strike would be impractical and ineffective and would only excite derision. But the following day, according to his testimony, he consulted with his attorney and wanted to bring an injunction suit to restrain the further work on his property, but the attorney advised against it because of the great expense and the large bond, twice the cost of the improvement, which would be required.

He further testified that getting no information from the city, and learning that the investigation which had been started showed that the city had no hold on the property, the ejectment suit was started against the city, which was ultimately decided in his favor; that it took only about seven or eight days from the time the workers came onto his property before they had all the trees and dirt removed and the concrete all down.

This recital of plaintiff Roth's activities as testified to by him, shows that he was a very busy objector and protestor.

It is interesting to note that counsel for defendant bank, base much of their claim of right for the city to use the strip, on the conduct of the husband alone. The title to the twenty foot strip was held by husband and wife, creating a tenancy by the entirety. It is a matter of interest to determine whether the action or nonaction of the husband alone, even though it was inconsistent with plaintiffs' claim of ownership, did give the city the right to use the twenty-foot strip. It is not claimed in the record that the wife made any of the alleged suggestions from which defendant's counsel argue that a title by estoppel vested by reason of the husband's conduct. In Brewing Co. v. Saxy, 273 Mo. 159, 201 S. W. 67, L. R. A. 1918C 1009, and in Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S. W. 72, the nature of an estate by the entirety is thoroughly analyzed, particularly in the former cited opinion, which contains a wealth of learning and an exhaustive investigation as to the common-law rule, and as to the effect, if any, which our Married Women's Statutes had in respect to this peculiar title of tenancy by the entirety.

In the Brewing Company case, *supra,* it is held that such a title could not be affected by the sole debt of the husband and it could not be conveyed by the husband's deed alone; that it would take the joint deed of both husband and wife to convey it.

In Ashbaugh v. Ashbaugh, *supra,* l. c. 357, the court uses the following language:

"An estate by the entirety is created by a conveyance to the husband and wife by a deed in the usual form. It is one estate vested in two individuals who are by a fiction of law treated as one person,

each being vested with the entire estate. Neither can dispose of it·
or any part of it without the concurrence of the other, and in case
of the death of either the other retains the estate. It differs from a
joint tenance where the survivor succeeds to the whole estate by right
of the survivorship; in an estate by entireties the whole estate *continues*
in the survivor. The estate remains the same as it was in the first
place, except that there is only one tenant of the whole estate, where-
as before the death there were two.''

Now, if the husband cannot convey any interest even, by his sole
deed, could he create an estoppel which would affect the title in any
way by his own acts? Or, could he make a dedication by his own
acts so as to affect the title? Neither counsel has suggested in their
briefs, or treated this any differently than if the title were other
than a tenancy by the entirety.

However, on the testimony alone, given in the case, we rule that the
judgment of the trial court should be affirmed, and, it is so ordered.
*Becker* and *McCullen, JJ.,* concur.