CHANCERY.

## Tomlin *vs.* Jayne, &c.

Case 33.

### ERROR TO PENDLETON CIRCUIT.

1. A husband has no right to dispose, by will, of his wife's interest in her deceased father's estate, which has never come into his possession.

2. If the husband does attempt such a disposition of his wife's interest in her father's estate, and make bequests in the same will to his wife, it presents a case in which the widow must elect to take under or against the will.

3. An election to take under or against a will, to be binding on the devisee must be made understandingly, and is not to be inferred from the mere failure to renounce the provisions of a will by the widow, where the will is made disposing of property clearly her own, and not the husband's, to bequeath.

4. A widow, who is herself an infant, will not be considered as making an election from the fact that her guardian received property given to her by the will.

September 24.

Judge MARSHALL delivered the opinion of the court.

Case stated.

In 1831, John Tomlin departed this life, having first made his will, by which he directed that his personal estate should be equally divided between his wife, Rebecca, and his infant daughter, Elizabeth Ann Tomlin, and also made the same disposition of the money coming from his wife's father's estate when collected; and directed that the money arising from the sale of his own estate should be appropriated to the support and schooling of his child. In the same year Ebenezer Jayne, the step-father of the widow, became the guardian of the infant, then one or two years of age, and received the widow and child into

his house, where he supported the child for near five years, and for about one year sent her to school. The personal estate of Tomlin netted, after payment of.debts, only about $70; but in 1836 Jayne, under a power of attorney from Rebecca Tomlin, received in the state of New York, of the money coming to her from her father, five hundred dollars. In 1840 John A. Arnold, having previously intermarried with Rebecca Tomlin, instituted proceedings which resulted in the removal of Jayne from the guardianship of Elizabeth Ann Tomlin, and the appointment of himself as guardian; and in 1841 this bill was filed in his name, as guardian, and in that of his ward, suing by him as her next friend and guardian, against Jayne and his securities, praying for a settlement and payment of what was due her, and especially of one half of the $500 received in New York, which is claimed on the ground that the widow of Tomlin had not renounced the will of her first husband within one year, but had abided by it, &c. Jayne, in answer, says the ward's interest in her father's estate was more than exhausted in her support and schooling, and denies that he received any money in New York belonging to her. He admits the receipt of $500 under a power of attorney from Rebecca Tomlin, which he insists belonged to her, and did not pass by Tomlin's will because he had not reduced it to possession before his death. He sets up an account against his former ward, consisting principally of a charge for support and schooling, as above stated, which he claims as a set-off against any indebtedness to her. The auditor, to whom the accounts were referred, reported a considerable balance against Jayne after charging him with one-half of the New York money with interest; but the court being of opinion that he was not chargable on that account, and that every other claim upon him was more than satisfied, dismissed the bill.

From this statement of the case it will be perceived that the only serious question is, whether Elizabeth Ann Tomlin is entitled to one-half of the money re-

TOMLIN
vs.
JAYNE, &c.

1. A husband has no right to dispose, by will, of his wife's interest in her deceased father's estate, which has never come into his possession.

2. If the husband does attempt such a disposition of his wife's interest in her father's estate, and make bequests in the same will to his wife, it presents a case in which the widow must elect to take under or against the will.

3. An election to take under or against a will, to be binding on the devisee must be made understandingly, and is not to be inferred from the mere failure to renounce the provisions of a will by the widow, where the will is made disposing of property clearly her own, and not the husbands, to bequeath.

ceived from the estate of her mother's father, and whether, if so entitled, she can have a decree for it against Jayne and his securities, or against Jayne alone.

Obviously Tomlin had not the absolute right of disposing, by will, of his wife's interest in her father's estate not reduced to possession; but as he did undertake to dispose of it by his will, in which he also gave his wife one-half of his own personalty, a case was made for election by the wife, who could not hold under the will what her husband had a right to dispose of, and at the same time hold independently of the will and against it, property which, although it was in fact hers and not her husband's, he had expressly disposed of by his will.

But this election, to be binding upon the devisee, must be made deliberately and understandingly, and is not to be conclusively, if at all, inferred from the mere circumstance of her failing to renounce the will within the year prescribed by statute for her election whether she will take the provision made for her by her husband's will, or take that made by the law; nor is it to be thus inferred from her actually receiving and enjoying a part or all of that which has been given by the will. She may not know, and in a case like the present, where the gift by the will is absolutely insignificant, she would probably not imagine that by receiving a trivial gift from her husband she was giving up a much larger property of her own. She is bound to know, or to learn within a year, that she cannot retain the provision made for her by will, and at the same time resort to the legal provision. But the equitable principle, which requires that she shall not hold under and against the will, allows reasonable opportunity for making the election, which it regards as an act of the will prompted by an actual choice, and it does not give conclusive effect to any equivocal act not intended as an election, nor to any act done in ignorance, much less to the mere failure to act.

In the case before us, it does not appear that Mrs. Tomlin, who was herself an infant at the death of her first husband, and for whom, as well as for her daughter, Jayne was appointed guardian, ever in fact received even the small pittance bequethed to her by Tomlin. Jayne received and receipted for the entire personalty, as guardian for both of his wards, and it does not appear that either of them received any portion of it otherwise than in the support, &c., furnished by Jayne. There was then no actual taking under the will, which might furnish even plausible ground for saying an election had been made; and so far as appears, there was no act done by the widow indicating her election to take under the will and give up one-half of her New York legacy or portion, during the whole period of Jayne's guardianship for her daughter, nor in fact any decisive act of that character until after this suit had been pending for some time, when her husband, John A. Arnold, and herself having been made defendants, it is explicitly stated in their joint answer, sworn to by both, that she had always abided by her first husband's will, and desired and still desires its provisions, and especially that in favor of her daughter, to be carried into effect.

Twelve years before the filing of this answer she had authorized Jayne to receive this money as her agent, without any reference to the right of her daughter, and he had thus received it. Her second husband had demanded the money, thus received, and had obtained from Jayne some indefinite portion of it, but without so far as appears making any reference to the interest of Elizabeth A. Tomlin. These facts tend only to disprove an election to give up one-half of this money, but in some degree to prove an election to take the whole, or as much as could be got; and it may be that the election is at last made and declared in favor of the daughter, because the remedy of the mother is probably barred by time, or might on other grounds be ineffectual against Jayne alone, and under the idea, that so far as he can be charged as guardian,

TOMLIN
vs.
JAYNE, &c.

4. A widow, who is herself an infant, will not be considered as making an election from the fact that her guardian received property given to her by the will.

both of these difficulties may be avoided. Such a supposition is not inconsistent with the general facts, but can have no effect.

But because there was no election made during the guardianship of Jayne we are of opinion that he cannot be charged as guardian, and that his securities are not liable. As however he actually received the $500, and has not shown that he paid the whole, or even one-half of it to Rebecca Tomlin, or her second husband, and he has not pleaded the statute of limitation, he is still liable to pay at least one half of the $500 with interest; and Elizabeth Ann Tomlin is entitled to it by the election of her mother, and Arnold, her second husband, which operates at least as an assignment.

Charging the said Jayne with the $250 as received in March, 1837, and giving all just credits, we are of opinion that he is indebted on this account in the sum of $100 with interest from the first day of March, 1837, and should have been decreed to pay that sum to the complainant, and the bill should have been dismissed as to the securities.

Wherefore, the decree is reversed, and the cause remanded for a decree as above indicated.

HARLAN for plaintiff; SWOPE for defendant.

---

## Clarkson vs. Barnett's heirs.

Case 34.

1. A *lis pendens* purchaser of land must abide the decision of the suit, and the chancellor will compel him to give the possession to the successful party.

2. A petition brought by heirs to sell their real estate is not such a *lis pendens* as will authorize the chancellor to entertain jurisdiction to turn out one who enters, claiming the land as his own pending the petition for sale, at the instance of a purchaser under a decree for cash.

September 24.

Judge SIMPSON delivered the opinion of the court.

The heirs of E. B. Rule, claiming to be the proprietors of sixty acres of land in Grant county, filed a petition by their guardian, in the circuit court of that county, to have a sale of it decreed by the court, and obtained a decree for that purpose. A sale of the land was made under the decree, and it was purchased by David S. Clarkson after the petition was filed, and before the sale was made, Barnett entered upon the land and took possession of part of it, claiming it as his own. He contends that he had been in the actual possession of it for several years previous to the time mentioned, when he took possession of it by actual residence thereon, which he has continued ever since; but that fact is denied, and has not been established by proof.

The purchaser of the land under the decree of the court, filed a petition in the year 1839, to which he made Barnett a defendant, praying the chancellor to compel him to surrender the possession of the land, and to give to the petitioner the benefit of his purchase. The question to be decided is, whether the chancellor will, upon the facts stated, either require Barnett to surrender the possession, without any regard to the nature of his right or title to the land, or exercise a jurisdiction over the subject matter, and investigate the relative superiority of the title of the parties to the land, and decree accordingly, whether the title be legal or equitable.

There are cases where courts of chancery will enforce their decrees against all persons who may have acquired the possession of the land during the time the suit was pending; but the cases alluded to, are those in which the land is sued for, or where a suit is brought to subject it to sale for the payment of a debt, and pending the suit a person has gained the possession by purchasing the right of the original defendant. And there may perhaps be cases where the principle would be extended further, and a person who had acquired the possession during the pendency of the suit, claiming the land under another title, and not entering

McCANN & HAUSER for plaintiff.