IRENE MAYOR SUTORIUS, FLORENCE MAYOR CHAPMAN, HAROLD A. MAYOR, HELEN SCHLOTZHAUER, GLADYS OLSON, ARCHIE MAYOR, and THE FIRST NATIONAL BANK, a Corporation, Guardian of EDWIN MAYOR, JR., VELMA JUNE MAYOR, and ELA BELLE MAYOR, Minors, Plaintiffs-Respondents, v. WILHEMINA MAYOR, WILLIAM JENNINGS BRYAN MAYOR, LEVONAH MAYOR BAUER, LORA EVELYN MAYOR McWHIRTER, and WILLIAM JENNINGS BRYAN MAYOR, Executor of the Estate of HENRY A. MAYOR, Deceased, Defendants, WILLIAM JENNINGS BRYAN MAYOR, and LEVONAH MAYOR BAUER, Appellants.—No. 38311.—170 S. W. (2d) 387—171 S. W. (2d) 69.

Division One, April 6, 1943.

Rehearing Denied in Opinion Filed, May 4, 1943.

Motion to Transfer to Banc Overruled, June 1, 1943.

1236

*William S. Warden, Gilbert R. Titus, Paul C. Sprinkle, Wm. F. Knowles* and *Sprinkle & Knowles* for appellants.

1238

*Oscar D. McCollum* and *August F. Behrendt* for respondents.

DALTON, C.—Action in equity to quiet title and remove cloud on title to described real estate in Jackson County. From a decree granting the relief prayed, two of the defendants have appealed.

Prior to January 30, 1933, the legal title to the nine tracts of particularly described real estate stood in the name of Henry A. Mayor (hereinafter referred to as Mayor). On that date Mayor and wife conveyed to a third party and the third party conveyed to Mayor and Minnie Mayor, as husband and wife. Both deeds were recorded on February 15, 1933. Wilhemina Mayor, referred to in the deeds as Minnie Mayor, was Mayor's fourth wife. Mayor had seven children

by his first wife, four of whom predeceased him and another died prior to the present litigation. The living children, and the children of those who are dead, are parties to this suit. Mayor had no children by his second or third wives, but had two by his last wife. The contest here is between the children of the first marriage (or their heirs) and the children of the fourth marriage. The latter are the appellants.

Mayor died April 23, 1935. His widow, Wilhemina Mayor, survived him, but died after the institution of the present suit. Mayor was on friendly terms with all of his children and grandchildren and left a will, dated February 21, 1935, creating a trust estate and making provision for his widow and children, or their heirs. The detailed bequests will be referred to subsequently. Two of the nine tracts of real estate, supra, were particularly mentioned in the will and, from its terms, we think it apparent that Mayor assumed he owned the two mentioned tracts, and much more additional real estate than actually stood in his name at the time of his death. Those connected with the administration of his estate assumed that he owned all of the real estate in controversy; it was inventoried as a part of his estate and proceedings were had in exactly the same manner as though the real estate were an asset of the estate. On November 6, 1935 some of the children of the first marriage filed a suit to construe the will of Henry A. Mayor, deceased, as to particular matters, and the will was construed. Thereafter, on April 6, 1939, upon discovery of the deed to husband and wife, the widow (the surviving tenant by the entirety) conveyed all of the nine tracts of real estate to her own children (appellants here), reserving a life estate for herself.

Respondents proceeded on the theory that the conveyances of January 30, 1933, created only an apparent estate by the entirety; that no such estate was intended by the parties; that equitable title (by resulting trust) remained in Mayor; that, in any event, the widow waived her interest under the deed, elected to take under the will of her husband and was, thereby, estopped to claim under the deed; and that the conveyance by the widow to her children, purporting to convey the real estate subject to a life estate in the widow, was void and constituted a cloud on plaintiffs' title.

The trial court found in accordance with respondents' contentions (on both theories), to wit, that Mayor was the equitable owner of the real estate at the time of his death; that the widow, during her lifetime and widowhood, by acts and conduct, made an election to take under the will; that she and those claiming under her were estopped to claim any rights in the described real estate, other than were granted under the will; that her deed to appellants (her children) constituted a cloud on the title to the real estate; that such deed was void and should be (and was) cancelled and set aside;

and that title was vested in the trustee of the trust set up and declared in Mayor's will.

Appellants assign error on the admission of evidence and the findings contained in the decree.

The first charge contained in the petition is that on January 30, 1933, because of a damage suit for slander which had previously been instituted against him, Mayor and his wife conveyed all of the described property to a straw party "and as a part of the same transaction" had it reconveyed to himself and wife, creating an "apparent estate by the entirety" in Mayor and wife; that the deeds were executed and filed solely for the convenience of Mayor "by way of avoiding a lien upon said lands of any judgment that might be procured in the aforesaid suit, and not for the purpose of creating an estate by the entirety"; that his wife "joined therein, had actual knowledge thereof and acquiesced in said transaction"; and that the wife was never the owner of the real estate, but Mayor remained the equitable owner thereof.

The answer filed by appellants (concerning this part of the petition) admitted Mayor's ownership of the described real estate, prior to January 30, 1933, the relationship of the parties to the deeds, the existence of the conveyances alleged, but denied other allegations.

In support of the allegations, supra, it appeared that on October 3, 1932, a Mrs. Vasey sued Mayor for $35,000.00 for slander; that the cause was pending until December 12, 1934, when it was compromised and settled for $250.00; that while said cause was pending and prior to the admitted conveyances, Mayor, who seemed very much upset by reason of the pending suit, said to a daughter by his first wife (one of the plaintiff's below) and in the presence of his wife, Wilhemina (referred to as "Mama"), "I am afraid we will have to put this in Mama's name until this suit is settled." There was no showing that Mayor referred to the nine pieces of real estate in question, or to any real estate, but that issue is not raised. The evidence, supra, concerning the statement of Mayor to his wife was objected to and was admitted over objection that the witness was incompetent under Sec. 1887, R. S. 1939, 8 Mo., R. S. A., p. 78, Sec. 1887, because she was a party to the cause of action on trial, because she was claiming under Mayor, and because both Mayor and Wilhemina Mayor were dead. Appellants, who claim through their mother (Wilhemina Mayor, hereinafter referred to as the widow or Mrs. Mayor), assign error on the admission of this evidence.

Respondents say that the statement admitted in evidence bears only on the intent of Mayor at the time and only indirectly relates to the subsequent deeds; that Mayor himself, if living, would not be disqualified to testify as to his intention in making the conveyance; that there was no contract in existence; that the "other party" to the conveyances was the straw party, not Mrs. Mayor; that the

executor under the will of Mayor is only a nominal and not an adverse party; and that the court did not err in admitting the statement. It may be noted, however, that this was the only evidence admitted in support of the allegation that Mrs. Mayor had actual knowledge that the conveyance was solely for the convenience of Mayor, to create an apparent estate ·by the entirety, by way of avoiding a lien upon said lands of any judgment in the slander suit, and that Mrs. Mayor acquiesced in the transaction. It is upon the basis of this evidence that respondents subsequently insist that the declaration, and the provisions of the subsequent will, were communicated to the adverse ·party (Mrs. Mayor) under circumstances which called for a denial and that she (the adverse party) assented to and acquiesced in the declaration and in the terms of the subsequent will. It is on the basis of this evidence, and upon this evidence alone, that respondents say, ''She knew that her husband had previously expressed his intention of doing this (making the conveyance) to protect the properties from the lien of a possible judgment in a damage suit recently filed and then pending.'' Respondents further insist that, the fact that Mrs. Mayor joined with her husband in the first deed (to the straw party) shows ''she must have known for what purpose the conveyance was made.'' Aside from the alleged declaration, however, there is nothing in the record to show Mrs. Mayor knew her husband's purpose was to create temporarily an apparent estate by the entirety solely for his own convenience, or knew that no ▮▮▮ gift or provision for her was intended. We mention these facts to show the importance of the evidence objected to.

▮▮▮ Section 1887, supra, among other things, provides ''. . . in actions where one of the original parties to the contract or cause of action in issue and on trial is dead . . . the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, *and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided* . . .'' (The exceptions do not apply.) (Italics ours.)

The witness was one of the plaintiffs in the case; her rights were derived from her father and her father, if living, could not have testified to the alleged fact testified to by the witness, because Mrs. Mayor, if living, might have questioned or denied it. Elsea v. Smith, 273 Mo. 396, 408, 202 S. W. 1071. Accordingly, the witness cannot testify to such fact in her own behalf where both Mayor and his wife are dead, and where the cause is against those who hold under Mrs. Mayor. Eaton v. Curtis, 319 Mo. 660, 4 S. W. (2d) 819, 823(6); Rice v. Shipley, 159 Mo. 399, 405, 60 S. W. 740; Messimer v. McCray, 113 Mo. 382, 387, 21 S. W. 17; Slagle v. Calloway, 333 Mo. 1055, 64

S. W. (2d) 923, 924, 926. We must, therefore, exclude the evidence in question from consideration on our review.

Respondents next contend that the fact that, some two years after the execution of the deeds, Mayor executed a will expressly purporting to devise in trust two of the nine tracts (acting apparently upon the theory that he had title to all nine tracts), shows there was no intention on his part to create an estate by the entirety, and shows an intention to claim the property against his wife, which he would not be doing if he had given it to her. This evidence was objected to as hearsay upon the authority of In re Decker's Estate, 348 Mo. 32, 152 S. W. (2d) .104, 105. The will, while admissible on other issues, was executed long after the deeds were executed and recorded. Proof of an intention to claim when the will was made was not proof that an estate by the entirety was not created by the deeds, and regardless of Mayor's intention at the date the deeds were executed. Any statements in the will indicating that Mayor still claimed to own the property were not binding on Mrs. Mayor or appellants; nor were the provisions of the will sufficient to rebut the presumption of survivorship and ownership arising from the deed to husband and wife. See, Simon v. St. Louis Union Trust Co., 346 Mo. 146, 139 S. W. (2d) 1002, 1004; In re Decker's Estate, supra. The deed, itself, was not referred to in the will.

Appellants in their brief contend that, on the face of the petition, respondents seek relief against a transfer of real estate admitted to have been made by their father for the purpose of hindering, delaying and defrauding a creditor (whose claim had not been reduced to judgment), and that equity will grant no relief. Jones v. Jefferson, 334 Mo. 606, 66 S. W. (2d) 555, 560; Stierlin v. Teschemacher, 333 Mo. 1208, 64 S. W. (2d) 647, 752; Leeper v. Kurth, 349 Mo. 938, 163 S. W. (2d) 1031, 1033; Carrell v. Meek, 155 Mo. App. 337, 340, 137 S. W. 19; Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118; Charles v. White, 214 Mo. 187, 202, 112 S. W. 545; 27 C. J. 647, sec. 415. Respondents contend that the above argument is an admission by appellants (1) that Mayor did not intend to create an estate by the entirety and (2) that Mrs. Mayor knew such fact when the deeds were made. We cannot agree. The argument is not inconsistent with appellants' contention that there is no competent evidence to overcome the presumption that an estate by the entirety was created by the deed to husband and wife, and the allegation that the conveyance was for the sole convenience of Mayor as Mrs. Mayor knew was denied by appellants' answer.

On December 1, 1923, Mayor conveyed a tract of real estate to his wife and she reconveyed it to him on the same day. The first deed was recorded at once, but the second was not recorded for almost two years. On April 3, 1939, after the will was written, $4547.59 in Mayor's account (Mayor Walnut Oil Company) in the

First National Bank in Kansas City was transferred to the account of "Henry or Wilhemina Mayor." These facts are relied upon by respondents and appellants respectively as supporting their positions concerning Mayor's intention when the deeds of January 30, 1933, were executed. We think the evidence of little value because of remoteness.

 The deed of January 30, 1933, to Mayor and wife, as husband and wife, created prima facie, an estate by the entirety. Hiatt v. Hiatt (Mo. Sup.), 168 S. W. (2d) 1087, not yet officially reported; Baker v. Lamar (Mo. Sup.), 141 S. W. (2d) 31, 35; Milligan v. Bing, 341 Mo. 648, 108 S. W. (2d) 108, 109. Respondents, however, contend that, in view of the fact that Mayor owned the property and a damage suit was pending against him, there could be no presumption that a gift or provision for the wife was intended by the transfer of title to husband and wife. Respondents say a "trust results in favor of the husband during his lifetime and now to his heirs at law."

When title to real estate is taken in the name of husband and wife, even though the husband furnishes the consideration, it will be presumed that the husband intended the conveyance as a provision for his wife; an estate by the entirety is created, and no trust results. State ex rel. Roll v. Ellison, 290 Mo. 28, 233 S. W. 1065; Hernandez v. Prieto, 349 Mo. 658, 162 S. W. (2d) 829, 831; Hiatt v. Hiatt, supra; Alexander v. Alexander (Mo. Sup.), 44 S. W. (2d) 872, 874. Respondents, however, contend that they "are not seeking to set aside the entirety deed," but only to show that no estate by entirety was intended; that a trust resulted, and that Mrs. Mayor did not become the owner of this property upon the death of her husband." It is apparent that respondents are, in fact, attacking the deed, but in any event, the evidence is wholly insufficient to show an equitable title in Mayor at the time of his death. Respondents have not sustained their burden of proof. In Milligan v. Bing, supra, the heirs of a wife, she had died before her husband, were attacking a deed to husband and wife. The court said: "Upon its face, the deed created an estate by the entirety. But, regardless of that fact, plaintiffs are entitled to contradict the deed by parol evidence showing that it was not the intention of the parties to create an estate by the entirety at the time the deed was made. Plaintiffs are atacking the deed, therefore, the burden of proof is upon them. They will not be permitted to overthrow the deed and establish a resulting trust in the land in favor of the heirs of the wife except upon, evidence so clear and convincing as to leave no reasonable doubt in the mind of the chancellor as to the existence of the alleged trust." (108 S. W. (2d) 108, 109.) See also: Larrick v. Heathman, 288 Mo. 370, 376, 231 S. W. 975, 976; Fulbright v. Phoenix Ins. Co., 329 Mo. 207, 44 S. W. (2d) 115, 118; Schwind v. O'Halloran, 346 Mo. 486, 142 S. W. (2d) 55, 58.

Respondents further contend that the presumption of a gift or provision for the wife was in fact rebutted by clear, cogent and convincing evidence that Mayor did not so intend the conveyance. They point to the fact that the widow, although having joined in the conveyance to the straw party, made no claim (by survivorship under the deed) to the property for four years after her husband's death; and that, when advised of the deed in April, 1939, the widow could not believe it was hers, said she ''never dreamed of it,'' was greatly surprised and hadn't known it before. We think the presumption that an estate by the entirety was intended was not overcome, and we hold that Mrs. Mayor was the sole owner of the property upon the death of her husband. Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S. W. 72, 73; Otto F. Stifel's Union Brewing Co. v. Saxy, 273 Mo. 159, 163, 201 S. W. 67; Frost v. Frost, 200 Mo. 474, 480, 98 S. W. 527.

We now consider the issue of estoppel in pais. Did Mrs. Mayor waive all claims under the deed, supra, and elect to take under the will of her husband? Are appellants estopped by the acts and conduct of Mrs. Mayor to claim any interest in the described property, except under the will of Mayor?

By the will, dated February 21, 1935, probated May 2, 1935, all of Mayor's personal effects, including an automobile, books, rugs, chinaware, silverware, bric-a-brac, household goods and furnishings were given to the widow. The homestead, particularly described (being one of the nine pieces of real estate, supra), was devised to the widow for life and after her death to the trust estate. Special legacies were provided for the children and grandchildren. A trust estate was created with directions to the trustee to pay ''the net income from the trust estate'' to the widow ''so long as she shall live.'' The trustee was further expressly required to pay $24.00 per month from the net income of the Rhomberg Apartments, particularly described, to a daughter by his first wife and to let this daughter occupy, free of rent, a suitable apartment therein. The real estate upon which the Rhomberg Apartments were located was one of the nine tracts mentioned, supra. The will recited that real estate formed the major portion of the trust estate, but exclusive of the nine tracts of real estate, supra, Mayor owned only one small tract of real estate and a half interest in another, both in Johnson County, Kansas. The will was clearly executed upon the assumption that Mayor owned at least a large part (if not all) of the real estate in controversy, and it expressly provided that the provisions made for the wife were in lieu of all dower and marital rights in the testator's estate. Provision was made for the termination of the trust, five years after the death of the widow, and for the sale of the real estate and the distribution of its proceeds to the children or their heirs per stirpes.

The real estate in controversy (inventoried as a part of the Mayor estate) had an appraised value of $97,920.00. Personal property was

appraised at $7,738.99. An inheritance tax appraiser was appointed, a transfer tax was assessed and paid, a semi-annual and the first, second and third annual settlements were filed, but there has been no final settlement. The widow applied for and received a widow's allowance of $200.00 per month for one year, including "the $400.00 statutory allowance." No renunciation of the husband's will under Sec. 333, R. S. 1939, was made or filed, nor was any written election made or filed under Sec. 329, R. S. 1939. The automobile, supra, was sold by order of court and the proceeds paid to the widow. The widow remained in possession of the home (mentioned in the will) and used the household goods, furnishings, etc., during her lifetime. The trustee of the trust estate paid the widow the net proceeds of the trust estate. Including the widow's allowances, the widow received a total of $6824.25 from the Mayor estate. The income, however, from the described real estate (owned by the widow) exceeded $12,000.00, but it was mingled with other funds of the estate and a thirty-two apartment building was furnished out of the gross income of the estate. Prior to the conveyance by the widow to her own children on April 6, 1939, there was no tender back of furniture, furnishings, or income paid under the will, but only a demand for an accounting, as hereinafter mentioned. There were no other acts of renunciation of the will or of proceedings thereunder.

The real estate in Johnson County, Kansas, was sold in 1937 and 1938; the first tract by the ancillary administratrix with will annexed and the Trustee and Executor under the will (for $4500.00), and the second tract a one-half interest by the estate and the other one-half interest by the widow, the widow agreeing to take $660.93, one-half of the net proceeds of the sale. A part of the proceeds of the first tract ($3500.00) was demanded by and paid over to the Missouri Trustee and Executor for the express purpose of paying taxes on the real estate in controversy in Missouri and federal estate taxes. Thereafter, on October 14, 1940, the widow filed an election with the probate court of Johnson County, Kansas, whereby she elected "not to take under the will of her husband," but to take a one-half interest in her husband's property. The court found that she had previously elected to take under the will; that she had failed to renounce the will in said probate court; and that she was estopped by her acts and conduct to take under the law of descent and distribution in the State of Kansas. She had, of course, secured the proceeds of her own interest in the Kansas property and the rights of the purchasers of *his interest* had intervened. It is admitted that under the law of Kansas, except for the acceptance of the provisions of the will, the widow would have been entitled to a one-half interest in the first Kansas tract (owned by her husband) and to a one-half interest in her husband's half interest in the second Kansas tract.

The charge of *estoppel in pais* in the petition is based upon the alleged acceptance by the widow of provisions made for her in the will of her husband, to wit, (1) the alleged acceptance of personal property bequeathed to her (in lieu of her own real estate which testator sought to devise in trust and in lieu of her statutory rights in his property) and her retention of the personal property or its proceeds, (2) the occupancy and use of the home, apparently under claim of a life estate therein under the terms of the will (even though in fact owned by her under the deed), (3) the acceptance and retention of the payments of net income of the trust estate under the terms of the will (although such income was much less than the income of her own property), (4) the acquiescence in the sale, by the ancillary administratrix with will annexed, of real estate standing in her husband's name in Kansas, and without any claim to a one-half of her husband's interest in such land (to which she was entitled under the law of Kansas and which could not be affected by the husband's will, unless accepted by her), (5) the fact that she claimed only her own interest in the Kansas real estate (the second tract being owned as tenants in common) and waived all interest in her husband's portion of such real estate, thereby making an election in that state between statutory and testamentary rights *in her husband's real estate*, (6) the acquisition by innocent third parties of an interest in property of the estate, and (7) the failure to renounce the will of her husband in Missouri, or to make any election contrary to the will, within the time provided by our statutes.

In argument here, respondents add that the widow failed to claim the real estate in controversy under her own deed within a reasonable time after the death of her husband; that she waited more than four years (an unreasonable time); that she induced respondents to rely to their detriment upon her acts in apparent acceptance of the provisions of her husband's will; that there was no return or tender of money or property received by her under the will; and that by reason of respondents' change of position in reliance on her conduct, she cannot now change her position to their damage. Respondents further insist that, upon the basis of the foregoing facts and other facts hereinbefore referred to (to wit, the inventorying of the described real estate as a major part of her husband's estate, the ascertainment and payment of inheritance tax, the use of the proceeds of the Kansas real estate to pay estate taxes and taxes on the lands in controversy, and the administration of the properties as a part of the husband's estate with the widow's acquiescence and actual knowledge) the widow has waived all rights under the deed, and she and those claiming under her (to wit, the appellants) are estopped to claim any interest in the described real estate, except under the provisions of the will.

Appellants' position, shown by their answer, is that Mrs. Mayor "was without knowledge that she was the owner" of the described real estate under April 6, 1939; that she "was wholly ignorant of probate procedure, was without business experience" or legal knowledge, and was not informed of her rights; and that by mistake the real estate was inventoried as a part of her husband's estate.

Wilhemina Mayor was born in Germany and came to America when seventeen years of age. She could read and write English with some difficulty. She used German script and wrote slowly. Usually some one did her writing for her. When reading she had to look up many words, and correspondence was usually read to her. She lived with Mr. Mayor for more than twenty-five years, during which time all of the real estate in controversy was acquired. Mayor was engaged in the manufacture of hair dye, a business carried on in the home. His wife and the children did manual labor in the home, bottling the walnut hair dye. The husband handled all real estate and financial matters. When the husband died, a description of the real estate was obtained from his rental records. and all assumed that the real estate was in his name. There was evidence that the attorney for the estate told the widow that the real estate belonged to the estate, and he discussed with her her rights under the will. He assumed that title stood in Mr. Mayor's name. This same assumption was apparently made by the widow, the children, the executor, the attorneys and the probate court. The widow discussed the will and its terms with one of the plaintiffs, who testified that the widow thought she should have had the home in her own name to do with it as she pleased. Defendants' evidence tends to show the widow thought her husband had treated her harshly; particularly so, in view of her efforts towards the accumulation of the estate. She cried bitterly and was broken hearted about the provisions for her in the husband's will. There was also evidence that she repeatedly consulted the attorneys for the estate, the children and others about the will. They tried to explain to her the terms of the will, but there was difficulty in getting her to understand. There is no evidence that she employed an attorney to advise her as to her rights. In the years following Mayor's death there was constant friction concerning the estate, between the widow and her children, on the one hand, and Mayor's children by his first marriage on the other.

Early in April, 1939, a real estate man, seeking to secure a lease on one of the tracts in controversy called Mrs. Mayor ▮▮▮ about said tract and she advised him that the property was a part of the estate. He had checked the records and told her that title had been taken in the name of husband and wife. She was surprised, could not believe it, but was glad to have the information. She phoned her daughter and consulted her son and, also, the attorney for the estate. At one time, shortly thereafter, the widow, some of the

children and several attorneys were at the court house at the same time to see the record of the deeds. Later the original deeds were found in an abstract of title to some of the property. We think the overwhelming weight of evidence establishes the fact that, prior to April, 1939, the widow had no knowledge of the existence of the deed to her and her husband or of her ownership of the described real estate. Promptly upon discovery of the true state of the title, the title, the widow executed the deed to appellants, mentioned supra, demanded an accounting by the estate and insisted upon an immediate audit. There is little controversy as to the facts, the difficulty is concerning their legal effect.

Appellants insist that Mayor had no testamentary control over the described real estate at the time of his death; that he could not transfer title to the trust estate, since Mrs. Mayor held the title; that Mayor's will only purported to cover real estate over which the testator had "testamentary control at the time of" his death; and the will gave no notice of an attempt to dispose of real estate owned by the widow. The facts mentioned are not controlling, since it is contended that appellants are estopped to claim an interest in the described real estate because their grantor waived her interest under the deed and by her affirmative acts and conduct elected to take under the will of her husband. The widow unquestionably could have claimed and transferred her own property upon the death of her husband. She could have renounced the will, which expressly referred to and purported to devise the home and the Rhomberg Apartments and referred to real estate as the major part of testator's estate.

Respondents rely upon the rule stated in Wood v. Conqueror Trust Co., 265 Mo. 511, 525, 178 S. W. 201, as follows: "It is a fundamental principle of law that one who accepts a beneficial interest under a will thereby adopts the whole will, and renounces every right or claim that is inconsistent with the will. This is a principle of universal application, and it extends so far that, when a testator in his will disposes of property which belongs to a third party, and at the same time makes provision for that third party in his will, the party whose property is so wrongfully disposed of cannot accept the provision made for her in the will without allowing her property to be disposed of as the will provides."

Accordingly, where a beneficiary under a will has a claim adverse to the testator to property which the testator attempts to dispose of by the will, he must elect between his rights under the will and his adverse claim. Prouse v. Schmidt (Mo. Sup.), 156 S. W. (2d) 919, 921; Lindsley v. Patterson (Mo. Sup.), 177 S. W. 826, 832; Moseley v. Bogy, 272 Mo. 319, 198 S. W. 847; Arrington v. McCluer, 326 Mo. 1011, 34 S. W. (2d) 67; Austin v. Collings, 317 Mo. 435, 297 S. W. 36, 37; In re Bernay's Estate, 344 Mo. 135, 146, 126 S. W. (2d) 209, 216(9); Fox v. Windes, 127 Mo. 502, 30 S. W. 323, 325;

69 C. J. 1092, Sec. 2334. The rule "rests upon the obligation imposed on a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one, that he should not enjoy both." Graham v. Roseburgh, 47 Mo. 111, 114.

"If a person accepts a gift under a will, deed or a contract, he must also accept the burdens, if any imposed thereby, or he must reject the gift made to him thereby." Lindsley v. Patterson, supra, (177 S. W. 836, 832).

In the case of Colvin v. Hutchison, 338 Mo. 576, 579, 92 S. W. (2d) 667, 668(1), the court said: "The whole doctrine of election rests upon the equitable ground that no one can be permitted to claim inconsistent rights with regard to the same subject. If the benefits given by a will are accepted, this is usually held to be an adoption of the whole will and a renunciation of every right or claim inconsistent with it."

Non-statutory elections are discussed in In re Dean's Estate, 350 Mo. 494, 166 S. W. (2d) 529, 533, and it is there said that "as a matter of fact our decisions broadly base the necessity of such non-statutory elections on the ground of estoppel."

Under the authorities, supra, it must be conceded that a claim by the widow to the income of the trust estate and to the ownership of the personal property bequeathed to her under the provisions of the will is inconsistent with a claim that she is the owner of all of the real estate under the deed. At least two, if not all, of the nine tracts of real estate described in the deed were devised by the will to the trust estate, subject only to the rights of the widow and daughter, mentioned supra. No statute required the widow to elect whether she would claim under the will or under the deed, but in equity the circumstances stated required an election. Colvin v. Hutchinson, supra; Trautz v. Lemp, 329 Mo. 580, 612, 46 S. W. (2d) 135, 148; Elmore v. Byrd (N. C.), 104 S. E. 162, 163; 69 C. J. 1089, sec. 2330.

Did the widow *waive* her claim under the deed and *elect* to take under the will, so that she and those claiming under her are now *estopped* by her acts and conduct to claim the described real estate? If the widow is estopped to claim, the appellants as her voluntary grantees are also estopped. Hubbard v. Slavens, 218 Mo. 598, 621, 117 S. W. 1104. We consider first the effect of the widow's lack of knowledge of the existence of the deed and of her ownership of the described real estate.

Knowledge of the facts is essential to waiver, election or estoppel. "A waiver is an intentional relinquishment of a known right." Schwab v. Brotherhood of American Yeomen, 305 Mo. 148, 264 S. W. 690, 692; State ex rel. Continental Ins. Co. v. Becker, 336 Mo. 59, 77 S. W. (2d) 100, 105; State ex rel. Metropolitan Life Ins.

Co. v. Shain, 334 Mo. 385, 66 S. W. (2d) 871, 874; Wall Inv. Co. v. Schumacher, 344 Mo. 225, 125 S. W. (2d) 838, 839.

In Langdon v. Kleeman, 278 Mo. 236, 211 S. W. 877, 878, it is said: "Waiver is essentially a matter of intention. It need not be proved by express declarations, but may be shown by the acts and conduct of the parties, or even, under some circumstances, by their non-action. Whatever parties do or forbear to do, therefore, their acts or omissions, to be construed as waivers, must be so manifestly consistent with and indicative of an intention to relinquish the particular right or benefit that no other reasonable explanation of their conduct is possible."

One of the essential elements of estoppel by conduct, is that the party acted with a knowledge of the facts. Harrison v. McReynolds, 183 Mo. 533, 542, 548, 549, 82 S. W. 120; Delta Realty Co. v. Hunter, 347 Mo. 1108, 152 S. W. (2d) 45, 51; Prouse v. Schmidt, supra, 156 S. W. (2d) 919, 921; Roth v. Hoffman, 234 Mo. App. 114, 111 S. W. (2d) 988, 992(7); 21 C. J. 1151, 1152.

"To constitute an estoppel it must appear that the party acted with full knowledge of all of the material facts and circumstances and with a knowledge of his legal rights, and that the position of the party invoking the doctrine would be changed if the matter was opened up." Garesche v. Levering Inv. Co., 146 Mo. 436, 451, 48 S. W. 653, 657.

 Of course, the deed was of record, and all parties had equal means of ascertaining the facts, but the evidence shows that the widow had no personal or actual knowledge, either of the deed or of her ownership of the real estate. An equitable estoppel cannot be founded upon facts equally within the knowledge of both parties or where they have equal means of knowledge. Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 235 S. W. 435, 442; Wilkinson v. Lieberman, 327 Mo. 420, 37 S. W. (2d) 533, 536; Delta Realty Co. v. Hunter, supra; Rhoads v. Rhoads, 342 Mo. 934, 119 S. W. (2d) 247, 252; Laughlin v. Wells, 314 Mo. 474, 283 S. W. 990, 992. And there is no estoppel where acquiescence by all concerned is due to a common mistake. Green v. Yarnall, 6 Mo. 326. Even "acquiescence imports and is founded on knowledge and assent." Garesche v. Levering Inv. Co., supra (146 Mo. 436, 452, 48 S. W. 653); Tennent v. Union Central Life Ins. Co., 133 Mo. App. 345, 361, 112 S. W. 754; 21 C. J. 1217, sec. 222.

All of the acts and conduct of the widow (relied upon to show an election to take under the will rather than under the deed) occurred before the widow had any knowledge of her own title or of the existence of the deed. The rule is that acts and conduct to constitute an election must be unequivocal in character, showing an intention to elect, and be done with an understanding of the situation and with the intent to make an election. Colvin v. Hutchison, supra.

Acts done in ignorance of one's legal rights and without knowledge of the facts necessary to a decision do not amount to a binding election where the position of the parties has not changed. See, Lynch v. Jones (Mo. Sup.), 247 S. W. ▮▮▮ 123, 126(3); In re Goessling's Estate, 287 Mo. 663, 230 S. W. 613, 616, 617; Egger v. Egger, 225 Mo. 116, 145, 123 S. W. 928; Clark v. Hershey, 52 Ark. 473; 12 S. W. 1077, 1078; Tomlin v. Jayne, 53 Ky. 160, 162; Shewmake v. Robinson, 148 Ga. 299, 96 S. E. 564; 69 C. J. 1117, sec. 2392; 69 C. J. 973, sec. 2166.

▮▮▮ Respondents further rely upon the rule that "where one has the right to accept or reject the benefits of a transaction and takes and retains the benefits, he is afterwards estopped to take a position inconsistent with the one thus assumed." Clelland v. Clelland, 291 Mo. 312, 235 S. W. 816, 817. Respondents point to the fact that the income from the trust estate was paid to the widow during her lifetime; that she occupied the home and retained possession of the personal property bequeathed to her, including the proceeds of the automobile; and that she did not tender or return either money or property upon discovery of the deed. Testator's personal estate consisted of stocks and securities appraised at $4699.50 and household effects and other chattels appraised at $3039.49. Debts, taxes and costs of administration were estimated (for inheritance tax purposes) at $7004.01. The net proceeds of the testator's real estate (all located in Kansas) amounted to approximately $4800.00. The appraisal of the widow's real estate was $97,920.00. All of the widow's real estate was taken charge of by the executor of Mayor's estate, except the home. In occupying the home, the widow was using her own property. The evidence shows the estate received much more from the widow's real estate than the total of all benefits which she received under the will from her husband's property. No tender was required. See, Register v. Hensley, 70 Mo. 189, 195; In re Flynn's Estate, 228 Mo. App. 1197, 67 S. W. (2d) 771, 775. She did demand an accounting and audit and, on the record before us, that was sufficient.

▮▮▮ Respondents, in connection with their argument that the widow may not claim inconsistent rights (under the will and under the deed), say that "the only exception to this rule is in the line of cases cited by defendants (appellants) that where a widow is without knowledge of her legal rights she will not be held estopped by her former election, if restoration of what she has received is made and her renouncement will not be prejudicial to others." Respondents then take the position that they have changed their position in reliance on the widow's apparent acceptance of the will and contend that to permit her to change her position would be prejudicial to them.

It is an essential element of equitable estoppel that the person asserting the estoppel shall have changed his position for the worse in reliance upon representation or conduct of the person sought to be estopped. Prouse v. Smith, supra, (156 S. W. (2d) 919, 921). No prejudice to respondents is pleaded and none is shown by the evidence. Even in argument, the only prejudice suggested is that, because of the intermingling of the income of the property of the widow with the funds of the estate, "if renunciation of the will is upheld," an audit and accounting will be required and it will be difficult to determine the rights of the parties. While such difficulty might be inferred from the evidence, it is in our opinion insufficient to estop the widow or those claiming under her from retaining title to the described real estate.

The facts necessary to establish an estoppel are well stated in Prouse v. Schmidt, supra. The burden of proof to establish the estoppel charged, and the essential elements thereof, rested upon respondents, the parties pleading the estoppel. Rhodus v. Geatley, 347 Mo. 397, 147 S. W. (2d) 631, 639(19); Globe Securities Co. v. Gardner Motor Co., 337 Mo. 177, 85 S. W. (2d) 561, 568; 19 Am. Jur. 852, sec. 198.

Respondents further insist that the widow elected to take under the will; that Sections 332 and 333, R. S. 1939, are applicable; and that no written renunciation of the will was made and filed under Section 333, supra, within twelve months after the proof of the will. No real estate of which the husband died seized was devised to the widow. The husband owned no real estate in Missouri. The widow owned the home in which the will purported to give a life estate. The will could not and did not pass any title to the home to her, and she claims no statutory or election dower in any real estate whereof her husband died seized. Respondents say that Section 333, supra, is a statute of limitations, like Section 329, R. S. 1939, and that without a written renunciation within the time ▮ provided the widow took under the will, had no right to later renounce it, and may not now claim her own property under the deed. Respondents cite, Lee's Summit Building & Loan Ass'n v. Cross, 345 Mo. 501, 134 S. W. (2d) 19; O'Brien v. Sedalia Trust Co., 319 Mo. 1001, 5 S. W. (2d) 74; Schweer v. Schweer (Mo. App.), 86 S. W. (2d) 969. We think the period of limitations fixed by the statute, supra, has no application under the facts of this case.

It may be conceded that an election was required between the widow's *statutory rights* in her husband's property and her *testamentary rights* in his property under the provisions made for her in his will, but it was an election required in equity and only because she could not claim inconsistent rights in her husband's property. Trautz v. Lemp, supra, (46 S. W. (2d) 135, 148). The will on its face required the election to be made, since it expressly provided

that the provisions made therein for his wife should be in lieu of all dower and marital rights *in his estate* at the time of his death. Whether or not a binding election was in fact made, for or against the will, with reference to *testator's property* depended on the widow's knowledge of the facts and such election should not be implied, so as to be binding in this case, where she had no knowledge that the real estate mentioned in the will did not belong to her husband.

Respondents further contend that the failure of the widow to renounce the will of her husband, within a reasonable time after it was probated, constituted an election to take under the will and was a waiver of her claims under the deed. They insist that a lapse of four years was more than a reasonable time within which to discover the true facts and that, long prior to April, 1939, the widow had, by her failure to renounce the will and its benefits, elected to take under the will rather than the deed, and regardless of the true state of facts and whether known to her or not. Respondents rely on Sanders v. Jones, 347 Mo. 255, 147 S. W. (2d) 424, 427. That case, however, recognizes the rule that "there is no presumption that a donee has accepted a gift which is not beneficial but is saddled with onerous exactions." In the case at bar an election to take under the will, rather than under the deed, would impose heavy burdens with only nominal benefits. We think the facts fail to show that there was election (by estoppel) by the mere lapse of time, particularly since the rights of no innocent parties have intervened.

Respondents finally say the fact that the widow elected to take under the will has 'been determined between the parties in the State of Kansas. The real estate in controversy was not involved in the Kansas proceeding. The judgment therein is not pleaded, nor had it been rendered when this proceeding was instituted. Real estate owned by Mayor and the statutory or testamentary rights of the widow in his real estate was considered in that proceeding. It was determined that the widow had elected to take under the will and that by her acts she was "estopped to take under the law of descent and distribution." In that case the rights of the purchasers of her husband's property had intervened. The widow claimed and secured *her own property* in that state. The fact that the widow was estopped by her acts and conduct to claim a statutory interest *in her husband's real estate* in Kansas (after its sale under the circumstances stated) is not controlling on the issue of whether she is estopped in equity to claim *her own property* in this state under the deed. The election contended for is based upon estoppel, to wit, that the acts and conduct of the widow now estop her to renounce the will and claim her real estate as her own.

Title to no real or personal property, owned by Mayor alone at the time of his death, is involved in this proceeding. The sole issue presented here concerns the title to real estate owned by Mayor

and wife as tenants by the entirety, but which Mayor, by his will, attempted to place in the trust estate, subject to the limitations mentioned, supra. The only issue with reference to his property (of which the widow was the sole owner upon the death of her husband) is whether appellants are estopped by her acts and conduct to claim the property (which was deeded to them), that is, whether her acts and conduct constitute a waiver of her rights under the deed to her and an election to take the benefits conferred by the will of her husband. While the evidence shows she knew of the will and of its terms and of other facts connected with the administration of her husband's estate, the evidence is overwhelming that she did not know of the deed or of her ownership of the described property. We hold that the widow did not waive her rights under the deed; that she did not elect to take under the *will* rather than under the *deed*; that she was not estopped to renounce the will on discovery of the true facts; and that appellants are not estopped in equity to claim the described real estate.

While it may seem that equity would require a more even distribution of the described real estate to all of Mayor's children, yet sound principles of well established law (affecting title to real estate) may not be avoided because of apparent hardship in a particular case.

In view of the conclusions reached, supra, it is unnecessary to determine whether respondents seek relief against a transfer of said real estate made by their father for the purpose of defrauding creditors, as mentioned, supra; nor is it necessary to determine whether respondents invoke equitable estoppel to protect themselves from loss, or invoke it for the purpose of recovering title and possession of real estate which was not a part of the estate of their father at the time of his death and in which they have never had an interest. See, State ex inf. Shartel v. Missouri Utilities Co., 331 Mo. 337, 53 S. W. (2d) 394, 401; State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S. W. 466; State v. Shell Pipe Line Corporation, 345 Mo. 1222, 139 S. W. (2d) 510, 524.

The judgment is reversed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION FOR REHEARING.

 DALTON, C.—Respondents contend that the opinion conflicts with Sec. 3427, R. S. 1939 (providing that certain recorded instruments shall "impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice"), and further conflicts

with cases holding that the effect of said statute is that purchasers "are charged with the same knowledge of recorded instruments as they would be of the contents of unrecorded deeds of which they have actual knowledge." Respondents insist that the widow as a devisee under the will of her husband and by reason of the statute, supra, had constructive knowledge of the recorded deeds from her husband to the straw party and back to husband and wife and, having such notice of the contents of the deeds, elected to take under the will. Respondents say that, for the purpose of determining whether the widow elected to take under the will, she must be considered "as having full knowledge of the fact that she was a grantee in the deed" under which she and appellants now claim.

We found that the widow had no actual knowledge of the existence of the deed to her and her husband, nor of her rights thereunder at the time she accepted benefits under the will of her husband; that promptly upon discovery of the true facts and upon learning of her legal rights, she renounced the will, claimed under the deed, and demanded an accounting by the estate; and that she then made the conveyance under which appellants claim. The record indicates, that at the time the widow demanded an accounting, her husband's estate had received more from the widow's real estate than the widow had received from the husband's estate, and there was no satisfactory proof of change of position or prejudice to respondents prior to or by reason of the renunciation of the will.

Respondents have sought relief in equity and insist that the widow waived her rights under the deed, elected to take under the will, and is now estopped to claim under the deed, and ask that her deed to appellants be set aside. We think the widow's constructive knowledge of the existence of the ██ deed, by reason of the statute, supra, was wholly insufficient to sustain the election contended for and, under the facts of this case, the widow could renounce the will and claim her own property upon discovery of the deed. The statute, supra, has no more application on the question of whether a binding election was made than the rule that "everyone is presumed to know the law," and to know his legal rights. Although one may have constructive knowledge of the record title of property with which he is dealing, yet, if while without actual knowledge of the true facts, he is deceived and defrauded by one upon whom he has the right, by reason of confidential relations, to rely, equity will grant relief. See, Scott v. Hill, 330 Mo. 490, 50 S. W. (2d) 110, 26 C. J. 1153, sec. 70. And so in this case, it is for a court of equity to determine whether a binding election was made under the facts of this case.

We think it clear from a mere statement of the general rules applicable to the type of election contended for by respondents, that the statute, supra, has no application,

"In order for acts of the party entitled to elect to have a binding effect as an election, they must be done with an understanding of the situation, and with the intent to make an election. Accordingly, acts done in ignorance of the existence of provisions of the will, or of the existence of a deed conveying to the beneficiary the same property devised to him by will, or in ignorance of, or under a misconception as to, the value of the estate or the legal rights of the party, or the legal effect of an election as such, or of other circumstances which would legitimately affect the decision, do not amount to a binding election, and will be discharged when the other parties affected thereby can be placed substantially in the same situation as if no election had been made." 69 C. J. 1117, sec. 2393.

"But a devisee's acceptance of the devise to him does not estop him from asserting his interests contrary to the will where such acceptance is made in ignorance of a material fact a knowledge of which is necessary to enable him to make an intelligent choice." 28 R. C. L. 329, sec. 317; Note, 21 American and English Ann. Cases, 556.

The rule is also stated as follows: "Where the election has been made in ignorance or under a mistake as to the real nature of the properties, or as to the nature of his own rights, such a mistake is regarded as one of fact rather than of law, and the election is not binding, and a court of equity will permit it to be revoked, unless the rights of third persons have intervened which would be interfered with by the revocation." Tolley v. Poteet, 62 W. Va. 231, 57 S. E. 811, 818, and cases cited.

The motion for rehearing is overruled. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.